[LOCAL LAW.]

## LITTLEPAGE *against* FOWLER and Others.

The following entry is invalid, for want of that certainty and precision which the local laws and decisions require: "January 27 1783. J. C. L. enters 20,000 acres of land on twenty treasury warrants, No. 8,859, &c. beginning at *the mouth of a creek* falling into the *main fork of Licking*, on the north side, *below some cedar cliffs*, and about 35 miles above the *Upper Blue Licks*, and running from said beginning up the north side of Licking, and bounding with the same as far as will amount to ten miles when reduced to a straight line, thence extending from each end of said reduced line, a northerly course at right angles to the same for quantity."

1826.

Littlepage
v.
Fowler.
*Feb. 14th.*

*Feb. 22d.*

Entry.

THIS cause was argued by Mr. *Bibb,* for the appellant,[a] and by Mr. *Talbot,* for the respondent.[b]

Mr. Justice JOHNSON delivered the opinion of the Court.

This cause comes up by appeal from the Circuit Court of Kentucky, in which the appellant filed his bill to compel the defendants to convey to him 20,000 acres of land in right of a prior e_try. The defendants, having obtained the prior patent, relied upon their prior legal rights; and, on the hearing below, the bill was dismissed. The entry on which the complainants relied was in these words:

"January 27, 1783. John Carter Littlepage enters 20,000 acres of land on twenty treasury warrants, No. 8,859, &c. beginning at *the mouth of a creek* falling into the main fork of Licking, on the north side *below some cedar cliffs,* and

*a* He cited Pannel v. Johnson *: Wheat. Rep.* 211. Hite v. Graham, 2 *Bibb. Rep.* 143. White v. Wilson, 3 *Bibb. Rep.* 542. Whitaker v. Hall, 1 *Bibb. Rep.* 79. Bodley v. Taylor, 5 *Cranch's Rep.* 224. M'Gee v. Thompson, 1 *Bibb. Rep.* 132. Marshall v. Currie, 4 *Cranch's Rep.* 176, 177. Bush v. Todd, 1 *Bibb. Rep.* 64. Whitaker v. Hale, *Id* 73. Roberts v. Huff, *Hardin's Rep.* 382. Taylor v. Kincaid, *Id.* 82. Bowman v. Mellin, 3 *Bibb. Rep.* 153.

.*b* He cited Hite v. Graham, 2 *Bibb. Rep.* 144. M'Kee v. Bodley, 2 *Bibb. Rep.* 482. Whitaker v. Hale, 1 *Bibb. Rep.* 79. Craig v. Hawkins, 1 *Bibb. Rep.* 53. Smith v. Walton, 3 *Bibb. Rep.* 153. Carland v. Rowland, *Id.* 127. Webb v. Bedford, 2 *Bibb. Rep.* 259. Greenup v. Lyne, *Id.* 37. Mercer v. Irvins, *Id.* 471. Landrum v. Hite, 1 *Marsh. Kentuck. Rep.* 419. Bartas Calhoun, 2 *Marsh. Kentuck. Rep.* 169.

about thirty-five miles above the *Upper Blue Lick*, and running from said beginning up the north side of Licking, and bending with the same, as far as will amount to ten miles when reduced to a straight line, thence extending from each end of said reduced line in a northwardly course at right angles to the same for quantity."

The only question in the cause is, whether this entry contains that legal precision which the land laws of Kentucky require to make an entry a valid appropriation of the land. For the defendants, it is contended, that it is vague, and calculated either to mislead a subsequent locater, or impose upon him an unreasonable labour in the effort to identify it.

On this subject, the rule of the law of that State, and the rule of reason, is, that the objects called for to designate the land appropriated, should be specific ; and, if not notorious in themselves, that they should be so indicated with reference to those which are notorious, as to enable a subsequent locater to discover and identify them by using ordinary diligence.

The locative calls in this cause are, a creek emptying into the main fork of Licking on the north side, below some cedar cliffs. It is not pretended, that these objects have the attribute of notoriety, and, in order to lead to their discovery, the subsequent locater is referred to the main branch of Licking river, and the Upper Blue Lick, which are notorious, and to the position and distance of the beginning point of the entry, with reference to the lick and the river.

Littlepage
v.
Fowler.

A subsequent locater, then, having this entry in his hand, and proposing to appropriate the adjacent residuum, proceeds to the lick as his starting point; when there, he knows that the land lies above him with reference to the river, upon the river bank, and, in the language of the entry, " about thirty-five miles above the Upper Blue Lick."

On what principle is the distance called for to be computed?

The first question which then occurs to him, is that which has constituted the principal subject of argument in this cause. Upon what principle is the distance here called for to be computed? For the appellant, it is contended, that he should pursue the meanders of the river, or the most practicable route by land; for the appellee, that he must apply the mathematical principle to the entry, and take the shortest line that can be drawn between the two points; and both contend, that they are sustained by adjudicated cases.

Examination of the cases on this subject.

We have examined those cases, and are satisfied, that neither party is supported in his doctrine as a universal principle; but that the Courts of Kentucky, with that good sense which uniformly distinguishes their efforts to extricate themselves from that chaos of rights in which political relations, and inveterate practice, had involved them, have left each case to be governed by its own merits, wherever distance has been resorted to as the means of identifying a locative call. And certainly the sense in which the enterer uses the reference to distance, is the only general rule that can govern a Court in con-

struing an entry. That sense may be gathered from his language, or inferred from the habits of men, and the state of the country ; but, as he is responsible for the sufficiency of his entry, it would be unfair to impose an arbitrary and unusual meaning upon the language of unlettered men, exploring a country covered with thickets, and replete with dangers.

For these reasons, the straight line, *as the means of ascertaining a locative call,* has certainly been rejected as a general rule. Such was the case in *Hite* v. *Graham et al.* (2 *Bibb. Rep.* 144, 145.) *M'Kee* v. *Bodley,* (2 *Bibb. Rep.* 482.) *Whitaker* v. *Hale et al.* (1 *Bibb. Rep.* 79.) *As the method of surveying an entry,* however, the meanders of a river are always reduced to a straight line, and to this class of cases are all those quoted for the appellee to be refered. (*Craig* v. *Hawkins' Heirs,* 1 *Bibb. Rep.* 53. and many others.) Yet, in the case of *M'Kee* v. *Bodley,* before cited, both the direction and admeasurement of a straight line are resorted to for the purpose of verifying a call lying on the side of a road. And the reason is obvious ; in that case, the shortness of the line, as well as the phraseology of the entry, rendered it admissible that the enterer referred to distance as ascertained by direct measurement.

One general rule is never departed from, to wit, that when distance is indicated by a road, it shall be held to mean, by the meanders of a road. (*Whitaker* v. *Hale, supra* and *passim.*) So, also, where there is no road or trace, the most

*1826.*

*Littlepage*
*v.*
*Fowler.*

Distance indicated by a road.

1826.

Littlepage
v.
Fowler.

usual route, if there be proved such a route to exist, seems to be the rule. So it is laid down in *Hite* v. *Graham et al.* in which, also, the general rule as to the sense in which the language of entries is to be received, is explicitly declared to be " according to the popular acceptation at the time when the entry was made." And, although, in the case of *White* v. *Wilson*, (3 *Bibb. Rep.* 542.) a learned Judge is reported to have said, " that there seems to be a diversity of opinion as to the most natural construction of a locative call in an entry where a given distance, up or down a water-course, is specified," we cannot but think, that the same rules which govern the cases on the subject of distances by land, have been distinctly and rationally applied to distances called for with reference to water courses.

Distances specified on water courses.

Distances on the Ohio are invariably measured according to its meanders. (*Hite* v. *Graham*, 2 *Bibb. Rep.* 143. *Johnson* v. *Pannel's Heirs*, 2 *Wheat. Rep.* 207.) Nor is there any thing arbitrary in the rule, nor leading to a result so indefinite as the supposed distinction between great and small water courses. Their *navigable character* furnishes the rule by identifying them with highways, and thus the popular acceptation of terms still furnishes the distinction. This is very obvious from the case of *Hite* v. *Graham*, in which the Court say, " As the Ohio is the usual way of passing from one point on it to another, and was, at an early day, the great highway of coming to that part of this country," &c. And, in the same case, speaking of the Little

Sandy, the Court observes, " This call, like that for distance on the Ohio, is not explicit as to computing it. But this stream, though like the Ohio navigable, is not like it impassable, except occasionally ; and a person, in passing from one point of it to another, is not necessarily confined to the winding of the stream. A direct line, however, would be impracticable to travel and use, put it out of the question as being a way in which a call of this kind would ever be understood by any one." And thus, in the case of *Bowman* v. *Melton*, (2 *Bibb. Rep.* 153.) where the call was for thirteen or fourteen miles up a small stream, the Court observed, " It, indeed, is not probable, that the distance along the meanders of the water course was intended, because, it is believed, that it never was usual to travel with the meanders of a small stream to ascertain the distance of one object from another ; nor is it probable that the distance by a direct line was intended, because it would extend beyond the head of the water course. But, it is rather to be presumed, that reputed distance was meant."

Since, then, all the testimony goes to establish, that Licking, above the Upper Blue Lick, is not a navigable stream, at least not so as to be resorted to as a highway, especially for ascending navigation, it follows, that the inquiries of a subsequent locater, who wished to appropriate the residuum adjacent to this entry, or of the surveyor who had a warrant to survey it, would be for a creek entering into Licking on the

north side, at a distance from the lick of about thirty-five miles, by some practicable route. The answer to this inquiry, as appears from the evidence, would direct him immediate to the fork of Licking. For Morrow, one of the witnesses, swears, that he could reach that point by travelling in a practicable route about thirty-five or forty miles, (p. 486. of the record) and in a direct line it is ascertained to be about thirty miles. Nor would the call for the cedar cliffs be wanting here, for, it is worthy of remark, that the call is not for a cliff adjoining, or near to, or in sight of, the mouth of the creek, but merely for a cliff at an indefinite distance above the mouth of the creek. Whereas all the witnesses who are examined to identify the mouth of Foxe's creek, where this entry is claimed to lie, answer under the impression, that the cliff is to be immediately above or adjoining the mouth of the creek. In this particular, there is much reason to believe, that Foxe's creek stands alone on the north side of Licking; but the call is vague and indefinite on this point, since it is answered, if the creek is below the cliffs at any reasonable distance.

We will now suppose the locater dissatisfied, or in doubt, with regard to the object thus found, and, returning to the lick, resolved to renew his researches. The idea of finding the mouth of Foxe's creek, by following a direct line, is out of the case, since no course is furnished him by the entry, on which to pursue his researches for this object. He must, then, either renew his in-

quiries for some other creek of the description called for; or, adopting the meanders of the river as his guide, pursue his way up its margin.

In answer to his inquiries, it is obvious, that any creek lying between the north fork of Licking and Foxe's creek, would be recommended to his examination in preference to Foxe's; because the latter must be farther removed from the distance of thirty-five miles than any one lying above it. If, then, the enterer intended to appropriate his land at the mouth of Foxe's creek, it is obvious, that his call for distance is calculated to mislead, not to direct, a subsequent locater.

But, as there is no evidence in the cause, of any road, trace, or explored route, leading from the lick to the mouth of any of these creeks, let us suppose the explorer at liberty to take the course contended for in behalf of the appellant, and to thread his way up the meanders of the river. When he reaches the mouth of Foxe's creek, he finds himself short of the distance called for by more than one third of the whole, that is to say, by eleven miles. Does the cause afford any ground, or the cases any principle, which will authorize his stopping there?

The call is for a creek " about thirty-five miles" above the lick. We are not disposed to restrict the appellant to the rigid rule formerly laid down by the Courts, by which the word " about" was rejected, and the entry limited to the number called for. In *surveying* entries, there is little doubt that this is the rule; but, in

1826.

Littlepage
v.
Fowler.

*measuring distances,* a more liberal rule is laid down in the more modern case of *Jones* v. *Plummer,* of which we are disposed to allow the party the full benefit. (2 *Littel.* 162.) It is in these words, " According to repeated decisions of this Court under the word ' about,' the subsequent adventurer might be required to stop a little short of, or extend the search a little beyond the distance called for."

But, according to the principle of this rule, if he might stop eleven miles short, he may advance eleven miles beyond the distance called for; and two and twenty miles search, or even the half of it, on the margin of such a stream, or any stream, would be too much to require of a subsequent locater.

Had the object called for had any claim to the attribute of notoriety, it might have had some greater claim to indulgence, on the principle of *Taylor* v. *Kincaid,* (*Hardin. Rep.* 82.) or, had there been proved a known and received computation of distance attributed to the object, it might have been considered with reference to the principle in *Bowman* v. *Mellin,* (3 *Bibb. Rep.* 153.)

But there is no evidence of any received estimation of distance from the lick to the mouth of this creek; nor is there the least evidence that it took the name of Foxe's prior to the entry. On the contrary, and this furnishes another legal objection to this entry, there is evidence, that at that time, and a year before,[a] it bore the name

---

[a] John M'Intire's deposition.

of Indian creek, and there is on the record a copy of an entry[a] made upon it by that name, in the same year, and only seven months junior to the entry of the appellants. Indeed, the time and incident that gave it the name it now bears, are positively proven to be cotemporaneous with the survey.

And, finally, if resort be had to the means of testing the identity of the call admitted in *M'Kee v. Bodley*, to wit, course and distance in a right line, we find the test entirely fatal to the call in this instance. The course is not given, and the distance is not one third of that called for. And we farther find, that there are at least two streams on the same river which answer the call, when subjected to this test, infinitely better; to wit, that now called the north fork, but which was formerly known as an undistinguished creek, and Warwick's creek or run, the former near thirty-five miles, and the latter twenty-seven and a half on a direct line from the lick.

On no principle, therefore, can this entry be supported, and the decree below must be affirmed, with costs.

Decree accordingly.

a Shephard's entry.