## THOMAS E. KIMBALL v. CHARLES D. SEMPLE et als.

ACKNOWLEDGMENT OF DEEDS OUT OF THIS STATE.—A Master in Chancery is not one of the officers authorized by law to take the acknowledgment of deeds out of this State, and within any other State.

CERTIFICATE OF ACKNOWLEDGMENT OF DEED.—A certificate of acknowledgment to a deed must state that the maker of the deed is either known to or proven to the officer taking the acknowledgment to be the person who executed the same; and if it state that he is proven to be the person who executed the same, it must also

Kimball *v.* Semple *et als.*

state that it was by the sworn testimony of a credible witness, giving the name of the witness.

DESCRIPTION OF LAND IN DEED.—In order to give a proper construction to a description of property conveyed by a deed, the Court will place itself, as nearly as possible, in the position of the contracting parties, and their intent will be ascertained in the same manner as in the case of any other contract, and if, when the Court has placed itself in that position, the intent of the parties is not apparent from the deed, it is to be sought by a resort to the rules of construction which give greater effect to those things about which the law presumes the parties are least liable to mistake. Arbitrary rules of construction are not to be invoked, if the intention of the parties can be plainly discovered without their aid.

WARRANTY IN DEED CONVEYING GRANTOR'S INTEREST IN LAND.—Where a deed, conveying to the grantee whatever interest the grantor then has in the land mentioned in the deed, contains a covenant that the grantor will "warrant and defend the premises conveyed from and against all or any incumbrances, claims, or demands created, made, or suffered by, through, or under him, and against none other," the warranty in the deed attaches itself to the interest conveyed, and not to the land itself, and does not estop the grantor from setting up an after acquired title, nor does it cause an after acquired interest of the grantor to feed the estoppel, and inure to the benefit of the grantee.

CONSTRUCTION OF DEED BOUNDING LAND ON A RIVER.—L. executed to W. a deed, conveying all his estate, right, title, etc., in and to an undivided half of nine Spanish leagues of land on the Sacramento River, described as "commencing at a point on the said river two Spanish leagues in length along the said river below a point on the same made by the intersection with the river of the lower or southerly boundary line of a tract of land on said river, known as the Rancho of Larkin's children; thence running southerly, (its eastern boundary for the whole length being the said river) nine Spanish leagues, more or less," to the southern boundary of the Jimeno grant, and back from the river one league more or less, the whole length of the tract conveyed. The grantor further recited in his deed that he meant and intended to convey all his rights, etc., in and to the Jimeno grant, "with the exception of a tract of two Spanish leagues in length, along and with said river, on the upper or northerly part of said Jimeno grant." *Held,* that the surrounding circumstances showed that the parties did not contemplate an accurate measurement of the land, and that the place of beginning to survey the nine leagues conveyed is to be ascertained by measuring two leagues in length from the southern boundary of Larkin's children's rancho in a straight line, without following the meanderings of the river, to such point on the river as the straight line two leagues in length would strike it, and that the land conveyed extended down the river nine leagues more or less from the point of beginning, following the meanderings of the river to the southern boundary of the Jimeno grant.

DEED OF EXECUTORS AS EVIDENCE.—An Act of the Legislature which empowers the executors of a deceased person to sell and convey lands of the deceased is not sufficient to lay the foundation for introducing in evidence a deed executed by the executors without proof of the death, and that deceased made a will appointing executors who had entered upon the discharge of their duties.

PATENT.—A patent of a confirmed Mexican grant of land issued by the United States cannot be called in question in an action brought by those claiming under it to recover possession of the land, by evidence showing that the Mexican Government had granted to the grantee more than eleven leagues of land, previous to the grant on which the patent was issued.

56

APPEAL from the District Court, Fifteenth Judicial District, Colusa County.

The defendants recovered judgment in the Court below, and plaintiff appealed.

The other facts are stated in the opinion of the Court.

*A. C. Whitcomb*, for Appellant.

Upon the general question of how measurements are to be made when the descriptions in deeds are very indefinite, or are silent upon the point, the reports contain but few cases that have not arisen in Kentucky or upon the Ohio River.

And the following appear to be rather the leading cases : *Pannell's Heirs* v. *Johnson*, 2 Wheaton, 206 ; *Littlepage* v. *Fowler*, 11 Id. 215 ; *Whitaker* v. *Hall*, 1 Bibb, 79 ; *Hite* v. *Graham*, 2 Bibb, 143.

And by them the following general principles appear to be established :

1. That when distance is indicated by a road, it is computed by the meanders of the road.

2. That distances on navigable streams—like the Ohio River—are computed by the meanders.

3. That in fixing, in a description, the point of commencement from another known point, the measurement is made invariably by the meanders, whether it is by road or by navigable stream.

We claim, therefore, in reference to the deed from Larkin to Whitcomb :

1. That the language of the description is unmistakable ; that the expression, " two Spanish leagues in length along and with the said river," does not mean, and cannot be interpreted to mean, a tract of land two Spanish leagues in quantity, or even two Spanish leagues in a straight line.

As the deed of Larkin to Whitcomb contains a full covenant of warranty as to the acts of the grantor, we claim for the benefit of the grantee therein the full benefit of a general covenant of warranty as to any act or conveyance of the

grantor. That covenant so contained has all the force and vigor of a general covenant of warranty; but is limited in its operation to the acts of one person, to wit: the grantor. So far as any act of his is concerned, it is in all respects equivalent to the general covenant; for the whole theory of a subsequent title inuring to the benefit of the grantee in a former deed containing a covenant of warranty, is based upon the anxiety of the law " to avoid circuity of action and to enforce complete justice without delay and further litigation." (*Clarke* v. *Baker*, 14 Cal. 630.)

The breach of covenant of warranty in this case was made (if made at all) by the sole act of Larkin, acting for himself, and as the attorney in fact of Missroon, in the deed of September 23d, 1851, to Hastings and Seawell. If any interest was conveyed by that deed in conflict with the interest conveyed in the deed to Whitcomb, it was of course a breach of the covenant in the latter deed. Then, if Larkin re-acquired (by the deed to him of March 26th, 1856) that former interest, it inured to the benefit of Whitcomb and his successors in interest, because the law will not encourage a multiplicity of suits by forcing Whitcomb or his grantees to sue Larkin upon that covenant, after the latter had re-acquired and could convey the very interest which was the foundation of the breach of covenant.

The only question presented by the Colus title as against the Jimeno patent, is that which arises from the attempt made by the defendants to show that prior to November 4th, 1844, the Mexican Government had granted to Manuel Jimeno twelve square leagues of land.

Even if this were true as a matter of fact, there are two good and sufficient reasons why it cannot avail the defendants:

1. The defendants are not the third persons who can raise the question, as they are still confessedly seeking a final confirmation of a survey making their general gift a specific one as of the date of January 31st, 1861.

2. Even if they were in a position to raise the question, it

could not avail them, as the grant to Jimeno would not be *void*, but only *voidable* at the instance of the granting power.

Upon the cession of California to the United States, this granting or controlling power became vested in the Government of the United States. (*Teschemacher* v. *Thompson*, 18 Cal. 24, 25.) The latter Government provided for the exercise of this power, as well as all others in reference to claims for land in California prior to the treaty, by the passage of the Act of Congress of March 3, 1851, creating a Board of Land Commissioners, with the rights of appeal from its decisions, first to the District Court of the United States, and finally from its decree to the Supreme Court of the United States.

This controlling power, then, was exercised in the matter of the Jimeno grant:

1. By the approval and confirmation thereof by the said Board of Commissioners.

2. By the approval and confirmation thereof, on appeal, by the United States District Court.

3. By the approval and confirmation thereof, on appeal, by the Supreme Court of the United States.

4. By the approval and confirmation of the survey thereof by the consent decree of the said United States District Court of April 6, 1861.

5. By the issuance by the Government of the United States of the patent dated July 18, 1862, for the said rancho under the hand of the President and the seal of the General Land Office.

*Semple* and *Goodwin*, for Respondents.

The Jimeno grant and patent is void because it was issued against law, the thing granted being prohibited by statute, and the officer granting having exhausted his power, and therefore having no power—having granted twelve leagues of land in the Californias prior to the grant under consideration. (See Colonization Laws of 1824 and 1828; *United States* v. *Hartnell's Executors*, 22 Howard; 1 Black, 132.) That a void patent may be attacked collaterally, see 2 How. 284 and 318; 13

Peters, 434; U. S. Condensed Reports, Vol. 3, p. 324; 1 Wheat. 112; *Patterson* v. *Winn*, 11 Wheat. 380; 10 John. 25; *Doll* v. *Meador*, 16 Cal. 330, 331, and 324, 325; Attorney-General Toucey's opinion and authorities, Lester's Land Laws of the United States, p. 661.

The power of attorney from Missroon to Larkin, dated in 1850, is sufficiently acknowledged. (See Cowan's notes to Phillips on Evidence, Vol. 2, pp. 585, 586; Statutes of California, 1860, p. 357.) The two deeds of 1851, and those of 1856, between Larkin, Seawell, and Hastings, must be construed as one instrument. (See *Stow* v. *Tift*, 15 Johnson, 458; 7 Mass. 496; 4 Mass. 266; 1 Johnson's, page 91; 3 Wend. 233; 9 Cowen, 274.) Even if these were a clause of warranty, title would not inure to Whitcomb. (*Stow* v. *Tift*, supra.)

A deed ought to be construed with a view to the thing sold. Larkin sold one half of *nine square leagues* of land. (See 16 John. 110.) The *intention* of the parties, which may be shown by parol, and *dehors* the deed must control. (See 1 Metcalf, 378; 3 Mass. 352; 10 Cal. 106; 1 John. 399; 3 John. 388.)

The computation of the distance to the beginning ought to be by a straight line—particularly as *a tract of land* was reserved, two leagues, etc. (See general rule in index, under head seven, title "Entry," 1 Bibb's Ky. Rep. and authorities there cited, some of which are: 1 Bibb, 55; Id. 123; 2 Bibb, 254; Id. 370, 371, 359–361; Id. 478; Id. 251; 3 Monroe, 135; 2 A. K. Marshall, 594.)

The deed ought to be construed according to the understanding of the parties *at the date of the deed.* (See 18 Wend. 451; 2 A. K. Marshall, 184; 3 A. K. Marshall, 574; 2 Ohio, 11; 1 Cranch, 45; 13 Peters, 81; Id. 133; 15 Peters, 173; 16 Peters, 162.)


By the Court, RHODES, J.

This action was brought to recover a tract of land which, it is claimed, formed a part of the Jimeno Rancho. The defendants claim that the premises in controversy are included within

the Colus Rancho, and the defendant Semple also claims under the Jimeno title.   The consideration of the case will first require the solution of a number of questions arising upon the construction of certain deeds of conveyance.

The Jimeno Rancho was granted to Manuel Jimeno in 1844, and consisted of eleven Spanish leagues of land, (the *diseño* containing a much larger tract,) and is bounded on the east by the Sacramento River.   The Colus Rancho was granted to John Bidwell in 1845, and is a grant of two Spanish leagues within a larger area, the whole tract being bounded by the Sacramento River on the east, and the larger portion of it being included within the Jimeno Rancho.   Larkin and Missroon purchased from Jimeno.

The defendants offered in evidence a power of attorney executed by Missroon to Larkin, authorizing him to sell lands, etc., which was acknowledged before a Master in Chancery, in the State of New Jersey, who certified, among other things, that he was "satisfied" that Missroon and wife were the grantors named in the deed, but not that they were known or proved to him to be such.   No proof was offered of the execution of the power, except what was afforded by the certificate of acknowledgment.

The plaintiff objected to its introduction as evidence, on the ground that it was neither proven nor properly acknowledged.   A Master in Chancery is not one of the officers authorized by law to take the acknowledgment of deeds, out of this State, and within any other State; and the certificate, by whomsoever made, must state that the maker of the instrument was known to him, or proven to him to be the person who executed the instrument.   If he is "satisfied," he must state how, whether by personal knowledge, or by the sworn testimony of a credible witness, whose name is inserted in the certificate.   The power of attorney should not have been admitted without proof of its execution.

On the 23d of September, 1851, Larkin and Missroon, by Larkin (who professed to act by virtue of the power of attorney just mentioned,) executed to Seawell and Hastings a deed

Kimball *v.* Semple *et als.*

of conveyance, purporting to quitclaim to them the undivided
two thirds of two Spanish leagues of land, "formerly known
as the Colus tract," including the Town of Colusa, being a part
of the eleven Spanish leagues "granted to Jimeno."  "Said
two leagues of land is supposed to have been granted by Don
Pio Pico, formerly Governor of Alta California, to John Bid-
well."  And at the same time, Seawell and Hastings quit-
claimed to Larkin and Missroon the undivided third of the same
land.  The evident intent of the parties was to make Seawell,
Hastings, Larkin and Missroon tenants in common of the two
leagues, so that Seawell and Hastings should hold each one
third, and Larkin and Missroon the remaining third.  The deed
of Larkin and Missroon was inoperative as to Missroon's inter-
est, in the absence of proof of power in Larkin to convey;
but it will be unnecessary to inquire what interest—whether
the one third or one half—passed by the deed of Larkin to
Seawell and Hastings; for in March, 1856, Seawell and Hast-
ings re-conveyed to Larkin all the right, title and interest they
acquired by the deed of the 23d of September, 1851, except
in certain town lots in the Town of Colusa, before that time
sold and conveyed by Seawell and Hastings.  On the 2d of
February, 1853, Missroon executed a deed which was recorded
November 24, 1853, by which he conveyed to Larkin all Miss-
roon's "right, title and interest in the upper or northern two
leagues of a rancho or grant of eleven leagues of land granted
to Manuel Jimeno  *  *  *, which two leagues join the rancho
or grant of land on said Sacramento River called rancho of
Larkin's children."  The description of the premises in the
deed last mentioned, does not include any of the Colus tract,
when surveyed so as to include the Town of Colusa, except a
strip of land of the width of five eighths of a mile, and extend-
ing from the Sacramento River to the west, about one league
in length.  In March, 1856, at the same time that Seawell
and Hastings executed their deed to Larkin, he executed to
them a deed of the undivided two thirds of the northern or
upper two leagues of the Jimeno Rancho—one of the objects
of the parties to the conveyances being to correct a misunder-

standing between them as to the true location of the lands described in their deeds of 1851.

On the 22d of April, 1852, Missroon conveyed to Coghill all his right, title, and interest in the one undivided half of nine Spanish leagues of land, "commencing two Spanish leagues below or southerly from the tract of land on said river known as the rancho of Larkin's children; thence running with said river southerly nine Spanish leagues, and one Spanish league back or westwardly from said river, being part of a tract on said river known as the Jimeno grant," excepting therefrom one thousand two hundred acres conveyed to Belden; and on the 23d of July, 1852, Larkin conveyed to Whitcomb all his estate, right, title, etc., in and to an undivided half of nine Spanish leagues of land, "commencing at a point on the said river, two Spanish leagues in length along the said river, below a point on the same made by the intersection with the river of the lower or southerly boundary line of a tract of land on said river known as the rancho of Larkin's children; thence running southerly (its eastern boundary for the whole length being the said river) nine Spanish leagues, more or less," to the southern boundary of the Jimeno grant, and back from the river one league, more or less, the whole length of the tract conveyed. The one thousand two hundred acres conveyed to Belden was excepted. The grantor recites in his deed that he means and intends to convey all his right, etc., in and to the Jimeno grant, "with the exception of a tract of two Spanish leagues in length along and with said river on the upper or northerly part of said Jimeno grant," and with the exception of the Belden tract. The title that passed by the last two deeds to Coghill and Whitcomb subsequently vested in the plaintiff.

In July, 1856, Seawell and Todd conveyed to defendant Semple, all their interest, "supposed to be two fifths of two thirds, in and to two leagues of land known as the Colus tract;" also whatever interest they had in the Jimeno tract. It does not appear that Todd had any interest, and the deed simply passed Seawell's undivided third in the upper two leagues

conveyed to him by Larkin. In 1861, Hastings and Lincoln conveyed to Semple a tract, described by metes and bounds, including a portion of the Jimeno and the Colus Ranchos, as surveyed, and in the same month Hastings conveyed to Semple all his interest in the Colus Rancho. The record does not show that Lincoln had any interest other than that derived from the deed of Larkin's executors to him. That deed will be hereafter considered, but it will be sufficient now to say that the deed, as offered in evidence, did not pass Larkin's title.

The parties present the question, whether the place of beginning in the deed from Larkin to Whitcomb, is to be ascertained by measuring two leagues in length from the southern boundary of Larkin's children's rancho, in a straight line, or following the meanderings of the river. If measured in a straight line, the excepted portion will be five eighths of a mile longer than if measured by the meandering line. The plaintiff insists upon the meandering line, and the defendants upon the straight line. It is the duty of the Court to give the deed the same construction that the parties gave it, at the time of its execution. The Court will place itself, as nearly as possible, in the position of the contracting parties, and their intent will be ascertained in the same manner as in the case of any other contract. If, when the Court has placed itself in that position, the intent of the parties is not apparent from the deed, it is to be sought by a resort to the rules of construction which give greater effect to those things about which the law presumes the parties are the least liable to mistake. But arbitrary rules of construction are not to be invoked, if the intention of the parties can be plainly discovered without their aid. At the date of the deed to Whitcomb, the southern line of the rancho of Larkin's children does not appear to have been established, nor was the northern line of the Jimeno Rancho ; but the parties in this case assume in argument that the two lines coincided. Neither the Jimeno nor the Colus Rancho had then been surveyed. The Jimeno Rancho seems to have been considered by the parties as a

grant of eleven leagues of land in length, with the average width of one league, bounded by the Sacramento River. The parties did not indicate an accurate measurement of the lines or of the land in any respect, but they simply provided for the conveyance of the undivided half of the lower nine leagues, or of all the rancho except the northern two leagues in length. From the point of beginning, the eastern line extended down and followed the river nine leagues, more or less, to the southern boundary and the tract extended to the west one league, more or less. The river is the only locative call in the conveyance, but the southern boundary, according to the testimony of Green, the surveyor, was a well known slough, called Sycamore Slough, designated on the *diseño* and on the plat attached to the patent of the Jimeno Rancho.

We can see nothing in the deed requiring a strict rule to be applied to the survey of the two leagues that does not as imperatively require the same rule in the survey of the nine leagues. The parties evidently did not contemplate a strict measurement, for after describing the premises conveyed they returned, as if for the purpose of a better description of the land to be conveyed, and say that the premises include all the Jimeno Rancho except a tract of two leagues in length along and with the river, on the upper part of the rancho. The excepted tract could not be two leagues in length, if the meanders of the river were required to be measured to find the length of the tract. Nor, on the other hand, would the tract conveyed, include the half of all the rancho besides the excepted portion, if surveyed as the plaintiff requires the upper two leagues to be measured, for the rancho exceeds eleven leagues in length. The situation of the land, the fact that it had not been surveyed, the absence of abuttals except on one side, the uncertain location of an adjoining rancho, the low price of the land, the loose description of the land conveyed and the land excepted, and all the surrounding circumstances, seem to indicate that the parties did not contemplate an accurate measurement of the lines, or a measurement by the meanders of the river. The rule contended for by the plaintiff has

been more frequently enforced in Kentucky, than any other State, and there were peculiar reasons for its application in that State, that do not exist in this, and its application was mostly in cases where persons had made locations of warrants in their own behalf, and had estimated distances by the usual routes of travel.   In *Littlepage* v. *Fowler*, 11 Wheat. 215, the Supreme Court of the United States, while willing to give effect in Kentucky to the authorities of that State, said, in a case where one party contended for the measurement by the meanders of the river and the other for a straight line : " We have examined these cases (the Kentucky cases), and are satisfied that neither party is supported in his doctrine as a universal principle, but that the Courts of Kentucky, with that good sense which uniformly distinguishes their efforts to extricate themselves from the chaos of rights in which political relations and inveterate practice had involved them, have left each case to be governed by its own merits, whenever distance has been resorted to as the means of identifying a locative call ; and certainly the sense in which the enterer uses the reference to distance is the only general rule that can govern a Court in construing an entry.   That sense may be gathered from the language, or inferred from the habits of men and the state of the country; but as he is responsible for the sufficiency of his entry, it would be unfair to impose an arbitrary and unusual meaning upon the language of unlettered men exploring a country covered with thickets and replete with dangers."

It. is apparent that the deed, when viewed by the light of surrounding circumstances, was intended as a conveyance of the undivided half of all the rancho except the upper or northern portion thereof, which was two leagues in length ; and this construction leaves the strip of land five eighths of a mile in width, to the north of the plaintiff's northern line.

A further point is raised in respect to the deed of Larkin to Whitcomb, the defendants contending that at its date Larkin did not hold any title in the Jimeno Rancho south of the upper two leagues, and within the Colus Rancho ; that Larkin, by his deed of 1851 to Seawell and Hastings, conveyed to them his

interest in the Colus Rancho; and the plaintiff asserting that the title acquired by Larkin, through the deed of Seawell and Hastings to him in 1856, vested in Whitcomb, by virtue of the warranty in Larkin's deed to Whitcomb. Larkin, by his deed, covenants with Whitcomb that he will warrant and defend the premises conveyed from and against all or any incumbrances, claims or demands created, made or suffered by, through or under him, and against none other.

At that time, he had parted with his interest in that portion of the land, which was included within the Colus Rancho. The deed to Whitcomb was simply a conveyance of whatever interest Larkin then held in the land mentioned in the deed, but it did not purport to convey the land, nor any certain interest therein, nor any interest he might thereafter acquire. The warranty in the deed attached itself to the interest conveyed, and not to the land itself, the grantor warranting the title conveyed by him against any incumbrance, claim or demand made or suffered under or through him.

The deed itself would not estop Larkin from setting up an after acquired title, nor will a warranty of the character of the one before us, when annexed to a conveyance merely of the grantor's present interest, cause the after acquired interest of the grantor to "feed the estoppel," and inure to the benefit of his grantee. In *Gee* v. *Moore*, 14 Cal. 472, a deed of the character of the one before us, and containing a covenant similar to the one in this case, was considered, and the Court held that the warranty was confined to the estate conveyed; and Mr. Chief Justice Field, in speaking of the deed, said: "It purports to pass all the right, title and estate which the grantor possessed in the land, but does not operate upon interests subsequently acquired." (*Blanchard* v. *Brooks*, 12 Pick. 47; *Comstock* v. *Smith*, 13 Pick. 116; *Miller* v. *Ewing*, 6 Cush. 34; *Duchess of Kingston's Case*, 2 Smith's Leading Cases, and Notes.)

It results from the construction we have given to the several conveyances, that the title to no part of the northern two leagues of the Jimeno Rancho passed to plaintiff through those

conveyances; that the deeds to Semple conveyed to him no interest in the southern nine leagues of the rancho ; and that the interest in that portion of the rancho lying south of the northern two leagues, which was conveyed by Seawell and Hastings to Larkin—and we do not undertake to ascertain what that interest was—remained in Larkin, so far as the record shows, at the commencement of this action.

The matters of greatest importance involved in this case, and which, perhaps, more than any other, it was desired by the parties should be decided on this appeal, are the questions arising out of the conflict between the boundaries of the two ranchos.   Since the trial of this cause in the Court below, it is understood that the Supreme Court of the United States, in the case of *The United States* v. *Sepulveda,* and in other cases, have more fully and accurately defined the jurisdiction of the District Courts of the United States respecting the surveys of private land claims in this State ; and if they have not modified their previous opinions, they have prescribed narrower limits to the power of the District Courts, under the Act of Congress of the 14th of June, 1860, than the bar of the State seem to have understood were fixed by that Act.   This case was not presented in view of the law as declared by the more recent decisions of that Court.   But be that as it may, the record is not in such form that we can properly pass upon the questions of conflict of boundaries, and settle the rights of the parties depending upon the priority of the segregation of the respective ranchos from the public lands.   The plaintiff presented an approved survey and a patent of the Jimeno Rancho, and on the plat the lines of a tract of land, marked " Colus Rancho," are delineated.   The defendants introduced a plat and the field notes of a survey of the Colus Rancho, approved by the United States Surveyor-General and the Judge of the District Court.   Three other surveys of the Colus Rancho were offered by the plaintiff, without any explanation as to the action taken upon them by the Surveyor-General or the United States District Court.   In such a condition of the evidence in respect to the survey of the Colus Rancho, it is

impossible to pass upon these questions satisfactorily to ourselves, and as it will be necessary to order a new trial on other grounds, we think it unnecessary to pass upon those questions at this time, but will leave the parties to present their evidence in the Court below, unrestricted by our opinion rendered upon a very unsatisfactory and meagre statement of facts.

We will proceed to notice further some of the errors assigned by the plaintiff. The deed from Frederick H. Larkin and Rachel Larkin to Jerome Lincoln was improperly admitted as evidence. There was no proof that Larkin made a will as mentioned in the deed, nor that he was dead, except that afforded by the Act of the Legislature, which denominates him "Thomas O. Larkin, deceased," and we doubt the power of the Legislature to determine judicially that Larkin was dead, or that he made a will; or if dead, who were his executors, or any other fact that must be ascertained by the proper Court, in order that proceedings to sell the real estate of any alleged decedent may have any validity.

The Court erred in admitting in evidence that portion of the "Spanish documents" consisting of the grant of the Sal Si Puedes, and other ranchos, which were offered for the purpose of proving that the Mexican Government had granted to Jimeno more than eleven leagues, previous to the grant of the Jimeno Rancho. These matters might perhaps have been properly addressed to the Federal authorities, in the proceedings to confirm the Jimeno Rancho title, but the legality or effect of a patent issued by the United States cannot, in this manner, be called in question. And for the same reason the several conveyances by Jimeno, of those ranchos to Crockett, Davidson and others were inadmissible.

The questions arising upon the admission of certain other deeds offered by the defendants, have been disposed of in considering the effect of the deeds already referred to.

The plaintiff also assigns for error the admission, as evidence, of the confirmation, survey and decree of confirmation thereof of the Colus Rancho, and of oral testimony respecting the quantity of land within the exterior lines of the Jimeno

Rancho; also, the exclusion of evidence offered by him in relation to the different locations claimed by defendant Semple of the Colus Rancho; but it is unnecessary to pass upon those points until the main questions, arising out of the conflict of the boundaries of the two ranchos are presented as above indicated.

Judgment reversed and cause remanded for a new trial.

Mr. Chief Justice SANDERSON expressed no opinion.

By the Court, RHODES, J., on petition for rehearing.

A rehearing was granted upon the petitions of both parties, and with the expectation, on our part, that on a re-argument of this complicated case, much additional light would be shed upon several points that, in the present state of the record, are quite obscure, but the cause has been resubmitted upon the former briefs and the petitions for rehearing. We shall, therefore, not pass upon any of those questions which, in our former opinion, we declined to consider, for reasons there stated; but will notice some of the points made in the petitions for rehearing.

The learned counsel for the appellant requests the Court " to fix with certainty the starting point in the deeds to Coghill and Whitcomb." To do so would be to find a fact, and that is the province of the jury, not of the Court. We have attempted to give a construction to the deeds that will serve as a means—a rule—to the jury, by which, coupled with the evidence, they may find the beginning point of the land described in the Coghill and Whitcomb deeds. We frequently state a portion of the facts in a case, not as finding them from the evidence, but to give application and point to our reasoning. If we mistake the facts or the evidence, it cannot by any possibility benefit or injure either party in a new trial of the action, for in that forum the parties must again produce their evidence and have the facts found, in the same manner as required at the first trial. If we had been of the opinion from

the evidence that the beginning corner was at a certain tree or stake on the river, and had so stated, and if on a new trial it should appear that another tree or stake was the point of beginning, our opinion would not overrule the effect of such evidence. The counsel affords in his petition, a better illustion than the case we just supposed. He claims that we are mistaken in saying that the southeast corner of the rancho of Larkin's children was uncertain or undetermined. We saw no evidence in the record showing that the rancho had been surveyed, or that the corners had been established, and in the absence of such evidence we considered that at the date of the deed to Whitcomb the rancho had no defined corners; but if on a new trial it shall appear that a survey had been made or that a line or corner had been established, the jury or the Court below will so find, without regard to what our opinion—not finding—of the fact may have been.

In regard to fixing the starting point, we have done only that which we are authorized by the power and jurisdiction of the Court to do; that is to say, to construe the deeds and to declare the law arising upon our construction of them, and our decision thus given will govern the Court below and the jury, in ascertaining the bounds of the premises described in the deeds.

We adhere to the construction of the deeds we have given, holding that the two leagues in length should be measured in a straight line from the point where the southern line of the rancho of Larkin's children intersects the Sacramento River. The position of the southern line of the rancho of Larkin's children, like any other fact in the case, must be proven on the new trial, by competent evidence. Our opinion that it was or was not proven at the first trial, will not dispense with proper proof at the new trial. We must have been strangely unfortunate, in the selection and use of language to express our opinion, in construing the deed of Larkin to Whitcomb, if the learned counsel is justified in saying that " it appears from the opinion that it was decided rather from the presumed or supposed intention of the parties to the deed, rather than

from the language itself of the deed," etc.    We attempted to read and interpret the words of the deed " in the light of the surrounding circumstances."    We ascertain the intention by an examination of the words of the deed, not by a resort to presumption or supposition; and we question the surrounding circumstances to learn the meaning of the terms employed by the parties—to enable us to occupy, as nearly as may be, the position of the parties when executing the instrument.

It will be a sufficient answer to the statement of counsel, made in connection with his remark just cited—that he drew the deed and used the language therein contained, to express the intention he now contends for—to say that he cites no authority, that permits the parties to a deed, to take the witness stand, and explain the meaning of the instrument they have executed.

If the language employed in describing the distance was the same as that used in the description of that portion of the land left out of, and excepted from the conveyance, there would be far more force in the appellant's views of the proper construction.    In describing the distance of the point of beginning, from the rancho of Larkin's children, the words are: " Two Spanish leagues in length along the said river;" and in respect to the excepted land the language is: " A tract of land two Spanish leagues in length along and with the said river."    A road may be said to run along a river that passes from point to point on the river, without following its meanders; but the boundary of a tract of land extending along and with a river, would coincide with the meanders of the river. Parties intending to describe a course or distance, coinciding with the bank or thread of a river, could very readily, and naturally would use language like that employed by Mr. Green, the surveyor, in giving his testimony—" the meanders of the river"—or words of similar import.

Counsel insist that the tract conveyed was not nine leagues in quantity, and the excepted portion two leagues in quantity— that is, leagues in area of land.    We interpret the deeds in this respect as does the counsel for the appellant.    The terms

58

" the upper two leagues " and the " lower nine leagues" were used in the opinion as convenient terms of designation, to avoid a long paraphrase. Our construction of the deeds, gives two leagues as the length of the upper portion of the rancho, not included in the conveyances to Coghill and Whitcomb, without regard to its width; and speaking of the lower nine leagues conveyed to them, we said: "From the point of beginning, the eastern line extended down and followed the river nine leagues, more or less, to the southern boundary, and the tract extended to the west one league, more or less." This sufficiently indicates the sense in which were employed the terms "upper two leagues" and "lower nine leagues," as designating respectively the northern and southern portions of the rancho, as separated by the line drawn westerly from the point of beginning, mentioned in the deeds to Coghill and Whitcomb, without regard to the quantity of land in either tract.

Our attention is again called by the appellant to the deed of the 23d of September, 1851, executed to Seawell and Hastings by Larkin and Missroon—Larkin, professing to act for Missroon under the power of attorney, the execution of which was not proven. The appellant objected to the deed as void for uncertainty, and now holds that if not void, it left in Larkin and Missroon one undivided third of the tract, out of which they professed to convey the undivided two thirds. We were inclined to the opinion that if Larkin had not, in fact, power to execute the conveyance for Missroon, the conveyance purporting to be for the undivided two thirds of the premises, was sufficient to convey the undivided half then held by Larkin, but we did not think the case required an examination and decision of that point, it appearing that whatever interest passed by that conveyance was conveyed to Larkin by Seawell and Hastings in eighteen hundred and fifty-six, subsequent to Larkin's deed of his interest to Whitcomb. Counsel have failed to point out an important discrepancy between the description of the premises in the two deeds. In our previous examination of the record, we had the impression that the description of the premises conveyed by Larkin and Missroon

to Hastings and Seawell, by the deed of September 23, 1851, was identical with that in the deed of Hastings and Seawell to Larkin and Missroon of the same date (except that one was of the undivided two thirds, and the other of the undivided one third of the tract of land), and was also identical with that contained in the deed of March 26, 1856, from Hastings and Seawell to Larkin, which purported to reconvey the lands so described in the deed of September 23, 1851, from Larkin and Missroon to Hastings and Seawell, and which professed to recite the precise description in the deed of September 23, 1851; but upon a further examination of the transcript, it is found that the descriptions materially differ. In the deed of September 23, 1851, by Larkin and Missroon, a portion of the description is as follows: " Two Spanish leagues (or *dos sitios de ganado mayor*) of land, on the west bank of the Sacramento River, part of the land formerly known as the Colus tract, including the Town of Colusa," etc.; while in the two other deeds the description is: " Two Spanish leagues (*dos sitios de ganado mayor*) of land, on the west bank of the Sacramento River, part of the land formerly known as the Jimeno grant, now known as the Colusa tract, including the Town of Colusa," etc. Doubtless one of the latter two deeds was before us when considering the appellant's point that the first deed was void for uncertainty. If the deed is correctly copied into the transcript, there would appear to be more force in the appellant's objection, than we formerly gave it. We would be justified in supposing that there was a mistake in one of the copies, and as we might do one of the parties an injury by passing upon a deed incorrectly copied into the record, we decline to pass on any question arising upon either of the three deeds.

The learned counsel for the respondents earnestly urges us to affirm the judgment, for the reason that the evidence shows, as he says, that the defendants' possessions were not included within the lands described in the appellant's deeds. We have remarked that we do not agree with him in holding that those deeds convey nine Spanish leagues in quantity. It is the

duty of the jury—not of the Court—to locate the deeds upon the land, and if the respondents were satisfied that the evidence showed that the deeds, when a proper location of them was made, would not include the land in controversy, they could well have rested their case at that point; but it is their misfortune that they have introduced illegal evidence of such a description that it is impossible for us to determine, whether the jury found for them on the legal or illegal evidence.

If the proof by the witnesses was, as the respondents assert, that they were all, except Roberts, above what they call the dividing line between the upper two and lower nine leagues, it might not necessarily follow that they were entitled to a verdict, for they admit that they were in possession of the "premises in controversy," which, according to the pleadings, are the premises described in the complaint, and which we understand to extend south of the said dividing line.

No appeal was taken from the judgment against defendant Amos Roberts, and that judgment is not before us for review.

The judgment entered May 14, 1863, is reversed and the cause remanded.                                                    ✓