[Civ. No. 5450. First Appellate District, Division One.—November 30, 1927.]

OCEAN SHORE RAILROAD CO. (a Corporation), Appellant, v. SPRING VALLEY WATER CO. (a Corporation) et al., Respondents.

Harding & Monroe and A. E. Shaw for Appellant.

Young & Hudson, Edward Fitzpatrick, U. S. Webb, Attorney-General, Paul F. Fratessa, Louis E. Goodman, David Livingston and B. F. Rabinowitz for Respondents.

STROTHER, J., *pro tem.*—This is an action by plaintiff to quiet title to a right of way claimed by it through land of the defendant Spring Valley Water Company situated in the counties of San Francisco and San Mateo. The defendants answered jointly, setting up abandonment of the right of way by plaintiff and its reversion to the Spring Valley Water Company; ownership by defendant State of California of a right of way for a public highway established over the lands, and a contract right of the defendant Lake Merced Golf and Country Club to purchase part of the land, and that the right of way claimed by the plaintiff intersects both of the latter. Judgment went for defendants, from which plaintiff appeals upon a bill of exceptions.

The principal issue raised by the pleadings and considered at the trial was whether or not there was such an abandon-

ment of plaintiff's right of way that the title thereto merged again into the title of the defendant water company.

Plaintiff introduced in evidence a deed by defendant water company conveying the right of way described in the complaint, for an expressed consideration of ten dollars, to plaintiff's predecessor in title, "its successors and assigns forever." There was some argument as to whether or not the right of way was for railroad purposes only; but it clearly appears from the deed that no other use was contemplated by the parties, and that use more than ordinarily restricted, evidently for the purpose of protecting from pollution the grantor's water supply. While a nominal consideration was expressed in the deed, it is shown by oral testimony that the actual consideration was at the rate of not less than twelve hundred dollars an acre for the land covered by the right of way. The railroad was constructed in 1907 and operated until about the end of 1920, when, upon the application of plaintiff the Railroad Commission having granted permission to discontinue its operation, plaintiff took up the rails and disposed of them and of its rolling stock. Officials of the plaintiff. corporation testified that it was expected to liquidate its affairs when the right of way and other lands owned by it were disposed of. After the removal of the rails part of the land was farmed by tenants of the water company, including the land claimed by the golf club. A highway was constructed over a right of way granted by the water company to the state, crossing plaintiff's right of way. The golf club entered into its contract of purchase and into possession of the premises on March 1, 1922, and has been continuously in possession ever since. The deed to plaintiff's predecessor in interest was not recorded until March 29, 1922, in San Mateo County, in which the golf club's land is situate, and no actual notice to the golf club of plaintiff's rights was shown. At the time this action was brought the consideration for the purchase by the club had not been paid. If the conclusion of the trial court is correct that the rights of plaintiff were terminated by its acts as recited, that disposes of the case as to all of the defendants.

█ Taking into consideration the price paid, and the agreement that no trains should stop on the land, no stations or other buildings be constructed, no debris of any

kind be allowed to escape upon the land, it is evident that the right of way was not conveyed by the water company in any degree as a subsidy, or for any consideration of its usefulness to the land. The provisions of the deed rather suggest that the railroad was admitted as an unavoidable nuisance to be hedged about by conditions designed to make it as unobjectionable as possible. There was no agreement that the right of way should be used by the grantee or its successors for any specified time or at all. The right of way under consideration is as much property within its limitations as an estate in fee. It may be conveyed in writing as any other interest in real property. ■■ Rights of way granted to common carriers and other public utilities are servitudes in gross as distinguished from easements. At common law a servitude in gross attached to a person and not to a dominant tenement. Such servitudes were not assignable and died with the owner. There seems to be a dearth of authority as to the nature of the tenure secured by public service corporations under modern conditions. Of necessity the common-law attribute of nonassignability does not inhere in them. That is not claimed by respondents here. This plaintiff in fact acquired its title by assignment, and its original title is conceded by respondents. ■■

The position of respondents is that the acts of the plaintiff constituted such an abandonment of the right of way as to terminate the servitude. The decisions are uniform to the effect that while a right may be lost by abandonment, the nonuser is only one of the elements of proof from which such an abandonment may be inferred. The real question to be determined is the intention of the owner of the right. The evidence in this case clearly shows that the railroad company always considered the right of way as an asset. An option was granted by it, and was outstanding some time before the suit was begun and was still outstanding at the time of the trial, for the sale of the right of way. Negotiations were had with the highway commission for granting a crossing over the said right of way on condition of the state providing a local clearance over the railroad. The liquidation of the plaintiff had been held up pending disposition of this right of way. It is very doubtful whether a right of way acquired as this one was by grant in perpetuity upon payment of full

value of the land to be occupied, and for no consideration of its value to the servient tenement, can be forfeited in any other manner than by prescription. But if it may be forfeited by abandonment, the intent to abandon must clearly appear. ■ The intention to abandon is not to be inferred from the outward and public acts of the owner only, but also from its dealings with relation to its title. " 'In the absence of a statute mere non-user for any length of time will not work an abandonment.' (33 Cyc. 222; see, also, 1 Cor. Jur. 8.) . . . The rule above stated is fully supported by decisions in this state and elsewhere (citing cases) . . . In *Moon* v. *Rollins,* in defining abandonment the court said: 'It is a question of intention and has been held so over and over again and not a question of time except so far as the jury are entitled to consider lapse of time in connection with other circumstances of claim or non-claim and acts of ownership or dominion or want of such acts, for the purpose of ascertaining the intention.' " (*People* v. *Southern Pacific Co.,* 172 Cal. 692 [158 Pac. 177].)

■ Here the whole course of dealing by appellant with the right of way as shown by its uncontroverted evidence negatives the inference that might be drawn from its public acts, and is not inconsistent with those acts. The finding of the trial court that appellant had abandoned the right of way is not sustained by the evidence.

■ Besides the arguments in which all of the respondents join in support of the judgment. it is urged on behalf of the golf and country club that it is an innocent purchaser for value without notice of appellant's right. This is a defense by way of estoppel and should have been specially pleaded. ■ There was no evidence or stipulation that the club had paid all or any part of the consideration for the land or had done anything more than enter into possession of it. One who claims as an innocent purchaser without notice must also show that he has paid the consideration. (*Lindley* v. *Blumberg,* 7 Cal. App. 140 [93 Pac. 894].)

■ The same considerations are presented on behalf of the state of California and the State Highway Commission as are stated for the other respondents. They are not in the same position, however, as the club. The commission

had notice of the claims of appellant through its dealings in regard to the highway crossing. The commission is the agency of the state in highway matters, and notice to the former was notice to the latter.

The judgment of the trial court is reversed.

Cashin, J., and Tyler, P. J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on December 29, 1927, and a petition by respondents to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 26, 1928.