[Civ. No. S. C. 34. Second Appellate District, Division One.—February 23, 1937.]

THE O. T. JOHNSON CORPORATION (a Corporation) et al., Appellants, v. PACIFIC ELECTRIC RAILWAY COMPANY (a Corporation), Respondent.

Kiggens & Hoffman and Elmer Hoffman for Appellants.

Frank Karr and C. W. Cornell for Respondent.

SHINN, J., *pro tem.*—Appeal by plaintiffs from a judgment in defendant's favor following an order sustaining a demurrer without leave to amend.

On November 1, 1913, O. T. and A. P. Johnson entered into an agreement with Pacific Electric Railway Company to convey to the latter a right of way for a railroad. The agreement recited that the railroad, if constructed within the time mentioned in the agreement, would be of benefit to the parties of the first part, grantors, and that the party of the second part, as a consideration for the construction of said railroad, required the parties of the first part to pay a bonus per lineal foot of line across the property of the grantors, and to convey a parcel thereof for railroad purposes. The agreement read in part as follows: "3. As a further condition of the conveyance of said right of way and the payment of said bonus, it is agreed between the parties hereto as follows:" (Here followed provisions for the completion of the road with certain connections and for the commencement of regular operation of passenger cars over said railroad within a given time, and for the locating of certain stations and the building of depots on the land.) It was then provided: "(c) That upon the completion of said railroad and the commencement of operation of passenger cars thereon and thereover, regular local passenger cars or trains shall be operated each way (East

and West making direct connections to and from Los Angeles) over said line through the said property of the parties of the first part at intervals of not greater than one hour between the hours of six o'clock a. m. and eight o'clock p. m. of each day making not less than fifteen local trains to be operated each way every twenty-four hours.'' It was provided that certain sidings should be constructed and maintained; that the grantors should by their deed reserve certain rights of way; that the grantee should construct, maintain and repair certain culverts and drainage facilities, should grade its land in a certain manner, should construct certain crossings, and pay for crops damaged. It was provided that the land should be used only for railroad purposes. The agreement then read: ''It is further agreed that if the said land so to be conveyed for such right of way shall at any time hereafter be used for other than railroad purposes by the party of the second part, or if the party of the second part, its successors or assigns, shall discontinue the use thereof for railroad purposes, or if any of the foregoing conditions shall be violated by the party of the second part, its successors or assigns, the title to the said land shall revert to the parties of the first part or their assigns. 7. The parties of the first part, upon the signing and delivery of this instrument, agree to execute a deed to said right of way, which deed shall contain the following conditions and restrictions, to-wit: It is understood that the strip of land herein conveyed shall be used for railroad purposes only, and in the event the party of the second part, its successors or assigns, shall, for a period of six months, cease to use said land for railroad purposes, then and in that event the title to said land shall *ipso facto* revert to and revest in said parties of the first part, their successors or assigns and shall be deposited in escrow with the Title Insurance & Trust Company, to be delivered to the party of the second part, provided the party of the second part shall, within the time hereinbefore limited, have completed its said railroad as hereinbefore required and shall have commenced the operation of its cars in accordance with the foregoing requirements. 8. If the party of the second part shall fail to construct said railroad within the time hereinbefore limited, or if it shall fail to commence the operation of its cars over said tracks as hereinbefore required, this agreement shall be void and of no further effect whatever, time being of the essence hereof.''

On November 18, 1915, the right of way was conveyed to Pacific Electric Railway Company, the grantors reserving the right to. construct and maintain across said right of way certain streets, pipe lines, and electric lines in such manner as would not interfere with the use of the property by the railway company. The conveyance stated that it was made subject to certain "conditions", namely, that the land granted should be used only for railroad purposes; that the railway company should, at its own expense, construct and maintain and repair crossings over its right of way where streets and roads crossed the same; that the railway company should at its own expense construct and maintain culverts and other drainage facilities to carry storm waters along the right of way and culverts necessary for irrigation ditches and natural watercourses across the strip of land. The deed then provided: "In the event that the party of the second part, its successors or assigns shall for a period of six months cease to use said strip of land for railroad purposes, or use said land for any purpose other than railroad purposes; or if any of the foregoing conditions upon which this conveyance is made shall be violated by the party of the second part, its successors or assigns, the title to the said land shall revert to the parties of the first part or their assigns. To Have and To Hold to the said grantee its successors and assigns, the right of way aforesaid, subject to the foregoing conditions. Nothing in this instrument contained shall be deemed to supersede, vary or annul any provision contained in the certain written agreement bearing date the first day of November, 1913, between said O. T. Johnson and A. P. Johnson, as parties of the first part and said Pacific Electric Railway Company as party of the second part; but each and all of the covenants and agreements of the party of the second part as contained and set forth in said agreement of November first, 1913, shall be deemed to remain and continue in full force and effect."

The deed was executed by plaintiff corporations, successors in interest to O. T. Johnson and A. P. Johnson. The railroad was constructed in accordance with the agreement, presumably prior to the delivery of the deed. From that time forth defendant operated cars and trains for the carriage of passengers until on or about October 16, 1933, when it ceased to operate any cars or trains for the carriage of passengers over said right of way, and thereafter has not resumed the

operation of passenger cars or trains, although it has been for many years last past and is now operating cars over said road for the carrying of freight as a common carrier. Because of the discontinuance of passenger service, plaintiffs made demand upon the railway company for a reconveyance of the land, upon the theory that the discontinuance of passenger service constituted a breach of a condition of the conveyance, which resulted in a reversion of title to plaintiffs. The railway company refused to make the conveyance, to plaintiffs' alleged damage in the sum of $15,000, one-half of which was sought by each plaintiff as compensation for taking for public use the reversionary interest in said land. The demurrer of defendant was sustained without leave to amend, and from the resulting judgment in defendant's favor plaintiffs appeal.

Plaintiffs' theory is that the agreement imposed upon the company the obligation to maintain passenger service perpetually, under the schedule stated in the agreement, and that the agreement should be construed as creating a reversionary right in the land conveyed upon discontinuance of such passenger service. The defendant contends that the duty of continued operation of passenger trains was not attached to the conveyance as a condition subsequent and that its entire obligation, as far as the passenger service is concerned, was satisfied when it completed the railroad and commenced the operation of passenger trains and cars upon the stipulated schedule. In sustaining the demurrer, the trial court upheld the contentions of the defendant.

We shall first consider the provisions of paragraph 3 (c), which cover the subject of passenger service. The requirement found there is that trains should be run on a certain schedule between certain hours of each day. Plaintiffs construe this provision as one calling for perpetual operation of passenger trains, as if the words "each day" mean for all time. But as we read the phrase it means only that there should be a daily service. It relates to the frequency of service rather than to its duration. No time for the continuance of the service was specified. The agreement was to become void if the railroad was not completed and passenger service was not commenced, as agreed, within a certain time. Those conditions had to be met before the deed would be delivered. It was intended that a regular passenger service

should be inaugurated and it was so provided, and it ·was quite appropriate that there should be set forth a schedule of operation of passenger trains which the parties had agreed upon. But we are of the opinion that the provisions of subparagraph (c) cannot be construed as requiring the continuance of a daily service forever. The obligation sought to be imposed upon the company is an exacting one, even if it be construed as a covenant only. It would hold the company to the continued operation of passenger trains to meet the convenience of plaintiffs, even against its own best interests or necessities. Of course, plaintiffs might have exacted those terms and defendant might have agreed to them, but it seems that if such had been the contract upon so important a matter, the intention would be found expressed in definite and unequivocal language. We do not find such expression in paragraph 3 or in any other part of the agreement.

As there was no express provision in the agreement, or in the deed, that passenger service should be continued perpetually, the position of plaintiffs cannot be maintained unless it be on the theory that an agreement to devote land to a particular use implies an agreement to perpetually devote it to that use. The authorities are strongly against such a construction.

In *Hasman* v. *Elk Grove Union High School*, 76 Cal. App. 629 [245 Pac. 464], land had been conveyed to a school district by deed containing the following language: "provided the same shall be used for the purpose of maintaining thereon a high school, otherwise the above described property shall revert to and become the property of the party of the first part, his heirs, or assigns". The land was used for a high school for some twenty-nine years and when this use was discontinued the administrator of the estate of the grantor brought action to compel a reconveyance. It was held that the high school had been maintained upon the land as required by the condition of the conveyance, and as the deed did not provide for a reversion upon a discontinuance of the use, but only upon failure to use it, the condition had not been violated. The authorities were fully reviewed in that case. Upon authority of the Hasman case it was held in *Booth* v. *County of Los Angeles*, 124 Cal. App. 259 [12 Pac. (2d) 72], that a deed stating "This conveyance is made for the purpose of a road or highway, to revert to said J. J. Harsh-

man, his heirs and assigns if not so used" required only that the land be put to use as a road or public highway and not that it should be perpetually used as such.

It was held in *Texas & Pacific Ry. Co.* v. *City of Marshall,* 136 U. S. 393 [10 Sup. Ct. 846, 34 L. Ed. 385], quoted with approval in the Hasman case, that an agreement of a railway company to "permanently establish its eastern terminus and Texas office at the City of Marshall" had been complied with when the terminus and office had been so located and maintained in good faith for a period of eight years. In *Mead* v. *Ballard,* 74 U. S. (7 Wall.) 190 [19 L. Ed. 190], it was held that the maintenance of university buildings for a period of nine years was a compliance with the covenant of the deed that the university should be "permanently" located upon said land. The same rule of construction was followed in *Bryan* v. *Louisville & N. R. Co.,* 244 Fed. 650, in *Jeffersonville, Madison & Indianapolis R. R. Co.* v. *Barbour,* 89 Ind. 375, and in *Scheller* v. *Tacoma Ry. & Power Co.,* 108 Wash. 348 [184 Pac. 344, 7 A. L. R. 810]. In the last case the covenant was that the grantee should build, erect and operate a narrow gauge railway upon grantor's land and should at all times operate and maintain said narrow gauge railroad, either by itself or assigns, between its terminal points, and should establish and maintain stations upon or near the land and stop trains of said railroad at such stations on all trips. These covenants were held to have been complied with by the operation of the railroad as agreed for a period of twenty-five years.

The reason adopted by the courts in the cases cited is stated in the Hasman case as follows: "Had it been the intention of Kerr that the property should revert upon the discontinuance of its use for high school purposes, it would have been so easy to have so stated, in plain and simple language, that it must be inferred from the terms actually employed that such was not his intention."

In the present case, as we have seen, there was no agreement that the passenger service should be a perpetual one or that the schedule of passenger service should be maintained by the railroad company for any definite length of time, and in this respect the contracts considered in the cases we have cited implied more strongly that the land should be devoted to a perpetual use than did the contract which we have before

us. And applying the reasoning of these cases to the obligation of the company under the agreement, we are obliged to say that if plaintiffs had sought to bind the company to a perpetual use of the railroad for the carrying of passengers, they should have used, and no doubt would have used, language which would have stated that obligation in certain and definite terms such as they employed in expressing the obligation of the company to build its road and to commence the operation of trains thereover upon a definite schedule and within a definite time. This they failed to do. We are therefore of the opinion that the lower court correctly held that the obligation of the company was met by the building of the road and the maintenance of passenger service as agreed for a period of some eighteen years.

The briefs are devoted in large part to a discussion of the question whether the obligation to maintain passenger service was intended merely as a covenant of the company or as a condition, upon breach of which title was to revert to the grantors. The argument is necessarily predicated upon the assumption that the company had undertaken to maintain perpetual passenger service over the right of way. As, in our view of the case, the company was obliged only to devote the property to railroad uses, including the inauguration in good faith of passenger service, as specified in the agreement, with the intention of maintaining the same permanently, there are removed from the case all questions which might arise under present conditions if the obligation of the company had been to maintain a perpetual passenger service.

In considering those provisions of the agreement and the deed which state the conditions upon which the grant was to be made, and was made, we find nothing which can be construed as placing the company under the duty, conditional or otherwise, of maintaining the scheduled passenger service perpetually or for as long as the land is used for railroad purposes.

The judgment is affirmed.

York, Acting P. J., and Doran, J., concurred.