[Civ. No. 15597.   First Dist., Div. One.   Sept. 15, 1954.]

OCEAN SHORE RAILROAD COMPANY (a Corporation), Plaintiff and Appellant, v. HENRY DOELGER et al., Defendants and Appellants.

Eli D. Langert and Norman S. Menifee for Plaintiff and Appellant.

Healy & Walcom for Defendants and Appellants.

BRAY, J.—All parties appeal from the judgment. Additionally, plaintiff moves to augment the record.

QUESTIONS PRESENTED

1. Whether the so-called Buck decree determined plaintiff's ownership to be in fee rather than an easement.

2. The situation as to the fills supporting the right of way.

3. Is the Buck decree res judicata of the question of abandonment?

RECORD

Plaintiff sued for damages and to enjoin trespass, alleging ownership and right to possession of a described 60-foot strip of land in San Mateo County, and ownership of an easement of support and exclusive right to possession of 70-foot strips of land on either side thereof. Defendants answered alleging ownership of a described tract of land which included all of the land claimed by plaintiff. In a cross-complaint defendants alleged additionally that plaintiff's rights were acquired by a grant* executed by defendants' predecessor in interest, Spring Valley Water Company, a corporation, September 15, 1909, to plaintiff's predecessor, Ocean Shore *Railway* Company, wherein plaintiff was granted "a surface right of way, for railroad purposes only, over" the 60-foot strip above mentioned, upon certain conditions therein expressed, which were made to inure to the benefit of defendants as successors in interest of Spring Valley; that thereafter plaintiff, with permission of the California Railroad Commission, discontinued its service on said right of way and removed and disposed of its rails and equipment; that thereafter, in an action brought by plaintiff against Spring Valley, Lake Merced Golf and Country Club and others, a decree was entered on May 16, 1930, the main contents of which decree are set forth.† The cross-complaint then states that there is a controversy between the parties as to whether plaintiff is the owner of the 60-foot strip in fee simple absolute and as to whether plaintiff is bound by the conditions of the grant and has forfeited all interest in said strip.

*Hereafter referred to as "the grant."

†This decree will hereafter be referred to as the Buck decree, as it was signed by Judge Buck.

The judgment signed by Judge Draper permanently enjoined defendants from entering upon, using or occupying the 60-foot strip. It decreed that the Buck decree is res judicata as to all issues of title between the parties and forever enjoins defendants from asserting any claim or interest "in and to the property described in that decree, or any easement therein or right-of-way thereover." It then decrees defendant Doelger, Inc.'s, ownership of the two 70-foot strips subject to plaintiff's easement for support of its fills, and provides that such easement is "without restriction upon the substitution by the said defendants of other forms or means of providing such support for all existing fills, provided such substituted support be the equivalent of the support now furnished by said fills and reasonably adequate to support the right-of-way and roadbed no less than do" the present fills. Matters of damages arising from the trespasses of defendants and other issues specifically reserved by the findings are to be set for further trial.

Plaintiff appeals from those portions of the decree permitting defendants to substitute support of plaintiff's right of way, preventing plaintiff from increasing the burden of lateral and subjacent support and refusing plaintiff a mandatory injunction compelling defendants to remove all fill placed on the 60-foot strip be defendants and to restore to the adjoining land all soil which has been taken from the supports. Defendants appeal from said judgment insofar as it enjoins them from entering upon or using the strip, or asserting any claim or interest therein.

### Contentions of the Parties

Interestingly enough, both parties contend that the Buck decree is unambiguous. Plaintiff contends that it decrees plaintiff to be the owner in fee of the 60-foot strip and hence that the Draper decree correctly construed it. Defendants contend that it decrees plaintiff to be merely the owner of a right of way for railroad purposes only, defeasible for abandonment, and that the right of way actually has been defeated by abandonment for railroad purposes, and hence that the Draper decree is wrong. Defendants then contend that if the decree is determined to be ambiguous the grant should be considered in construing it. Plaintiff contends that if the decree is so determined, the record on appeal should be augmented to include certain instruments dealing with and including proposed findings and conclusions and amendments

to findings submitted to Judge Buck at the time he signed findings and the decree in the previous case, which proposed findings and amendments were not adopted by him, and that these documents should be used in interpreting his decree.

### 1. *The Buck Decree (Fee or Easement?)*

In the action in which that decree was entered, No. 8831, Superior Court of San Mateo County, entitled Ocean Shore Railroad Company, a corporation, against Spring Valley Water Company et al., plaintiff asked the court to quiet its title to ''that certain surface right-of-way over'' the 60-foot strip, alleging ''title in fee to the said surface right-of-way.'' The answer of defendants Spring Valley Water Company et al., alleged that by the grant, Spring Valley Water Company conveyed to plaintiff a surface right of way, the metes and bounds of which were described in the complaint, for railroad purposes only; that thereupon plaintiff caused a railroad to be constructed over said strip of ground and operated it until February, 1921, when, pursuant to permit of the Railroad Commission, plaintiff ceased operation of said railroad, removed its tracks and abandoned said railroad easement or right of way, and that as a result of said abandonment the easement or right of way reverted to Spring Valley. The defendants asked that the court adjudicate such abandonment and decree that plaintiff has no interest or claim in said strip.*

After a trial and the decision on appeal in *Ocean Shore R. Co.* v. *Spring Valley W. Co.,* 87 Cal.App. 188 [262 P. 53], *infra,* Judge Buck signed the decree which Judge Draper interpreted in this action. Its terms, important here, follow. It decreed that plaintiff ''is the owner in fee . . . of a right-of-way for railroad purposes only over the following described real property . . .'' (the 60-foot strip above mentioned). It then decreed that the defendants (the predecessors in interest of defendants here) have no claim or interest ''in and to the said right-of-way for railroad purposes only over said strip of land hereinabove described or any part or parcel thereof or in or to any easement or right-of-way thereover and that the title of said plaintiff Ocean

---

*The answer also sets up ownership in certain lands by one of the defendants, Lake Merced Golf and Country Club, through conveyance to it by Spring Valley Water Company and its ownership by reversion of such portion of the strip as is included in the lands conveyed to it. For brevity, and as defendants have succeeded to all interests of both Spring Valley Water Company and Lake Merced Golf and Country Club, we will deal with the case as though the present defendants were the only defendants in the prior case.

Shore Railroad Company, as above set forth, in and to the said right-of-way for railroad purposes only over said strip of land is free and clear of any right, title, claim, lien, right-of-way, easement or interest of any character therein or thereover of the said defendants . . .'' and the said defendants are forever enjoined from asserting any right, etc., of any character in or to said ''right of way for railroad purposes only over said strip of land above described, or any part or parcel thereof, adverse to the title thereto as the same is hereby determined.''

The first question to be determined is whether this decree is ambiguous and requires evidence dehors the record to interpret it. Considering the decree, as we are permitted to do, in connection with the issues then before the court, we do not think it is ambiguous. In its complaint the plaintiff did not claim to be the owner of the strip in fee, but only the owner in fee of a surface right of way. Nor did the plaintiff claim that the defendants had no interest in the strip but merely that they had no interest in the surface right of way. While the defendants denied the specific allegations of the complaint, they affirmatively alleged that the Spring Valley Water Company, by the grant, conveyed to the plaintiff a surface right of way for railroad purposes only. They claimed that after plaintiff constructed its railroad thereon plaintiff abandoned it, and as a result of such abandonment the right of way and easement reverted to the defendants. Thus, according to the pleadings there was no issue before the court as to whether the plaintiff owned the fee of the strip as distinguished from ownership of the railroad easement. As said in *Ocean Shore R. Co.* v. *Spring Valley W. Co.* (1927), 87 Cal. App. 188 [262 P. 53],* ''The principal issue raised by the pleadings and considered at the trial was whether or not there was such an abandonment of plaintiff's right of way that the title thereto merged again into the title of the defendant water company.'' (P. 189.) Actually this was the *only* issue.

According to the pleadings, plaintiff was only urging title to the ''surface right of way'' while the defendants were claiming only that plaintiff's title thereto had been lost by abandonment. The fee title to the land itself was not involved. Bearing those issues in mind, it is clear that all the

*Appeal from a prior decree in favor of the defendants in the case under discussion. The decision reversed that decree. Thereafter, the Buck decree was filed.

Buck decree did was to determine that (1) plaintiff had a fee ownership in the right of way for railroad purposes only; (2) that it had not lost such ownership by failure to use the right of way, and (3) that the defendants had gained no interest in the right of way because of plaintiff's abandonment. Therefore the language in the decree to the effect that the right of way is free and clear of any interest or claim of the defendants does not mean that they have no interest in the fee of the 60-foot strip, but no interest in the railroad right of way which would or could interfere with plaintiff's right to use it for railroad purposes. This was practically the interpretation put on the issues in *Ocean Shore R. Co.* v. *Spring Valley W. Co., supra,* 87 Cal.App. 188, where the court referred to the right of way as one granted "in perpetuity," although the court stated that it was doubtful whether such a right of way could be forfeited by abandonment, or in any manner other than by prescription. Such statement was dictum, as the court determined the case solely upon the question of abandonment as a matter of fact. Moreover, the court said: "The right of way under consideration is as much property *within its limitations* as an estate in fee." (P. 191; emphasis added.) If it amounted to a grant in fee of the land itself, there would be no "limitations." This interpretation of the decree is supported by the language of the decision in *Ocean Shore R. Co.* v. *Spring Valley W. Co.,* 218 Cal. 86 [21 P.2d 588]. That was an appeal by Lake Merced Golf and Country Club from the Buck decree. The sole issue on appeal was whether the evidence supported the holding that the club was not a bona fide purchaser for value without notice of plaintiff's right. The club had purchased from Spring Valley certain lands including portions of the 60-foot strip. The reviewing court held that it was supported and that the club's title to the property was "subject to plaintiff's easement." The court stated (p. 87): "It appears that in 1909 the defendant water company conveyed to the plaintiff's predecessor in interest *a surface right-of-way for railroad purposes.*" (Emphasis added.) Throughout the opinion the court refers to "plaintiff's easement." If as claimed here, the Buck decree gave plaintiff a fee simple title to the strip, the court in considering that very decree would not have stated that the club's title was "subject to plaintiff's easement"; it would have said the club had no interest in the strip at all.

In the decree the words "owner in fee" mean merely

the owner of an estate of inheritance. (See Bouvier's Law Dictionary, "fee simple.") It is possible to have several estates in fee in the same land. (*Brooklyn El. R. Co.* v. *City of Brooklyn*, 2 App.Div. 98 [37 N.Y.S. 560].) ■ See annotation and cases cited 132 A.L.R. 172, for the principle that a grant to a railroad company of a right of way is generally construed as conveying an easement over the land described rather than a fee title to the land. See also *San Gabriel* v. *Pacific Elec. Ry. Co.*, 129 Cal.App. 460 [18 P.2d 996], holding that a grant of right of way for railroad purposes, although not using the word "perpetual," constitutes the grant of an easement in perpetuity for that purpose. In *Moakley* v. *Los Angeles Pac. Ry. Co.*, 139 Cal.App. 421, 424 [34 P.2d 218], it was held that the term "right of way for railroad purposes" has been held in a number of cases to carry an easement only. In *Roger* v. *Struven*, 44 Cal.App. 528, 533 [186 P. 817], it was held that the respondent was "the 'owner in fee of a special easement of right of way or passage over and upon . . .' " certain land (p. 533), and that the appellant who owned the fee title to the land was only restrained from "interfering with the respondent in his enjoyment of the special easement of right of way over" the land.

"The phrase 'for railroad right of way' cannot be rejected as surplusage, for it is presumed that no clause or word in a deed was used without meaning or intent." (*Sherman* v. *Petroleum Exploration*, 280 Ky. 105 [132 S.W.2d 768, 771, 132 A.L.R. 137].) So, too, the phrase in the Buck decree "for railroad purposes only" must be considered.

It has been held that the term "right of way" has two meanings, one, referring to an easement, the other to describe the lands upon which a railroad is situated. (See *Nesral Production Co.* v. *St. Louis, B. & M. Ry. Co.*, (Tex.Civ.App.) 84 S.W.2d 805, 808.) ■ But as said in *Uhl* v. *Ohio River Co.*, 51 W.Va. 106 [41 S.E. 340], that while in speaking of a "right of way" we may mean the land upon which it exists, in a grant to a railroad it means only the easement, the tenure, not the land granted.

In *Sherman* v. *Petroleum Exploration, supra,* 132 S.W.2d 768, quoting from 16 American Jurisprudence, Deeds, § 245, the court said (p. 772): "Upon the authorities already cited, the rule of reconciliation is thus stated in 16 Am.Jur., Deeds, Sec. 245: 'If, in a deed to a railroad, the land conveyed is described as a right of way, the deed may be construed as

giving an easement right only, and not the full fee, notwithstanding there are other words in the deed referring to the fee simple, for such a conveyance does but imply a grant of the easement forever.' ''

*People* v. *Thompson,* 43 Cal.2d 13 [271 P.2d 507], held that the deed of land to the state did not grant a fee title but merely a right of way for highway purposes. In the Buck decree the context and the issues shown by the pleadings well show that an easement only is expressed. The Buck decree does not hold the right of way here to be of the type set forth in *O. T. Johnson Corp.* v. *Pacific E. R. Co.,* 19 Cal.App.2d 306 [65 P.2d 368], where it was held that the abandonment of the use for passenger purposes of the railroad constructed on the right of way for passenger purposes while continuing to use it for freight purposes did not result in a reversion.

The Draper decree is erroneous in declaring that plaintiff is the owner of the strip in fee simple absolute and in finding that defendants have no interest in it. Plaintiff is the owner in perpetuity of a right of way for railroad purposes only over the strip.

2. *The Fills.*

In the case in which the Buck decree was entered there was no issue as to the 70-foot strips adjoining the 60-foot strip, and that decree does not purport to deal with them. Here, plaintiff claims the exclusive right to the possession of the 70-foot strips.* Defendants claim the title thereto and that plaintiff has no right therein. No grant was ever made to plaintiff of any interest in the adjoining strips. Its easements for support therein arise from the fact that in constructing its roadbed it used such strips for its fills and that such fills support the roadbed. Such easements are prescriptive in nature and are similar to the easement across Sharp Park mentioned on page 417 in *People* v. *Ocean Shore Railroad, Inc.,* 32 Cal.2d 406 [196 P.2d 570, 6 A.L.R.2d 1179]. Being of such a nature the Draper decree properly provided that plaintiff's ownership of such easements of support were ''without restriction upon the substitution by the said defendants of other forms or means of providing such support for all existing fills,'' etc. ''These rights of support possessed by the owner of land A are not rights to have the whole or any part of the adjacent or subjacent soil left in its natural state, but simply

---

*Hereafter referred to as ''adjoining strips.''

rights not to have land A injured by anything done, however carefully, in the adjoining soil subjacent or adjacent.'' (Gale on Easements, 12th ed., p. 337.)

However, a more important question arises concerning these adjoining strips, which the court should have passed upon, namely, whether or not plaintiff has not abandoned its easements in these strips. ▮ As said in *People* v. *Ocean Shore Railroad, Inc., supra,* 32 Cal.2d 406, 417, an easement acquired for railroad purposes may be lost by abandonment. Apparently the trial court in our case, in assuming that the Buck decree was res judicata of the question of whether there had been an abandonment of the easement for railroad purposes of the 60-foot strip, was also of the opinion that it was res judicata of whether there had been an abandonment of the prescriptive use of the adjoining strips, although they were not referred to in the Buck decree or in the action. ▮ Even though the Buck decree were res judicata of the question of abandonment of the 60-foot strip easement (and we hold that it was not) such adjudication could not affect the question of abandonment with reference to the adjoining strips, because that question was not before Judge Buck. Both because, as we will hereafter show, the determination by Judge Buck that under the facts as they existed in 1930, plaintiff had not abandoned its right of way over the 60-foot strip, is not res judicata of the question of abandonment of that very strip in the year 1952 (the year of the Draper judgment), and because there never has been a determination of the question of abandonment as related to the adjoining strips, the court should have determined such question. It did find that defendants had not acquired title by adverse possession to plaintiff's easement in the 60-foot strip and that defendants had paid no taxes on that strip. It reserved the right to determine ''the existence or extent of any cuts or excavations'' made by defendants ''on any of the slopes, fills or embankments supporting the right of way of the plaintiff. . . .'' It did not determine whether defendants had acquired by adverse user any portion of the adjoining strips.

### 3. *Res Judicata.*

The court in the Draper decree, in addition to finding that by the Buck decree the plaintiff owned the fee title to the 60-foot strip and was res judicata of that subject, found that that decree determined as a question of fact that there had been no abandonment of the use of the right of way for rail-

road purposes at that time and that such determination was res judicata of the question at the present time.* But this determination of the trial court was erroneous. ██ The fact that the acts of plaintiff prior to 1930 did not constitute an abandonment of its easement is not, and cannot be, necessarily a determination that plaintiff's acts subsequent to 1930 may not have amounted to an abandonment. The factual situation might be identical with that of 1930, in which case the Buck decree might be res judicata. On the other hand, the evidence indicates rather strongly that the situation has changed. The trial court should have determined this question and whether such abandonment, if found, caused a reversion. Involved in this question is the effect of the refusal of plaintiff to comply with the provision of the grant requiring the grantee ''to construct and maintain, at its own expense, any and all crossing over said surface rights of way that the party of the first part, its successors and assigns, may now, or at any time or times hereafter, require in its utilization of subdivision of its properties. . . .''

In *People* v. *Ocean Shore Railroad, Inc.,* supra, 32 Cal.2d 406, the court said in discussing the determination in the Buck decree that there had been no abandonment of the easement (p. 418) : ''The doctrine does not apply, however, where there are changed conditions and new facts which did not exist at the time of the prior judgment. (See *Guardianship of Snowball,* 156 Cal. 240, 242 [104 P. 444] ; *Timm* v. *McCartney,* 9 Cal.App.2d 230, 235 [49 P.2d 315] ; 15 Cal.Jur. §§ 201, 214, pp. 154, 179)'' It held that the Buck decree was not res judicata of the facts of that case and that the facts showed that there was an abandonment of the portion of the railroad there involved. (It did not include any of the easements under consideration here.) The court said (p. 419) : ''In the present case the facts are not the same, and the Spring Valley decision is not res judicata. Here the railroad operation was discontinued more than 14 years prior to the commencement of the action, there has been no resumption of service, and there was evidence that increased motor travel and other factors had made it economically infeasible to operate a railroad. Moreover, there were continued representations that the company was not a public utility, that it was in liquidation, and

*Had the Buck decree determined plaintiff's ownership to be in fee rather than in easement, the question of abandonment would not be involved. Obviously, if plaintiff owned the fee it could not lose it by abandonment, but only by adverse possession in another.

that it did not intend to engage in business other than that incidental to liquidation. We thus have evidence of subsequent facts which, when considered with the prior circumstances, would support a finding of intent to abandon even though we accept as controlling the determination of that case that there had been no abandonment when that action was commenced in 1922."

On the question of abandonment the following language from *Mammoth Cave National P. Assn.* v. *State Highway Com.*, 261 Ky. 769 [88 S.W.2d 931, 935], is appropriate: "The record clearly discloses that the railroad company, by abandoning the use of its railroad, tearing up and removing its tracks, and attempting to convey the land to others to be dedicated to other purposes, abandoned its right of way, and the lands thereupon reverted to the grantor or their successors in title." "The right of way is in the nature of an easement, and is acquired only for the purpose of the railroad. When the road is abandoned or removed from the strip of land over which the railroad has a right of way the land is discharged of the burden." (*California & Nevada R. Co.* v. *Mecartney*, 104 Cal. 616, 623 [38 P. 448].)

In 136 American Law Reports 297, it is pointed out that upon the abandonment of an easement for railroad purposes rather than the abandonment title reverting, it is more accurate to state that the title of the original owner is relieved of the easement to which it had previously been subject.

Nor does the fact that the easement was "in perpetuity" affect the question of abandonment, as perpetuity is "an inherent characteristic of a railroad right of way" (*San Gabriel* v. *Pacific Elec. Ry. Co., supra*, 129 Cal.App. 460, 464) created by grant, and such perpetual right of way may be forfeited by abandonment. (See *Sherman* v. *Petroleum Exploration, supra*, 132 S.W.2d 768, 772.)

### Waiver and Laches

Plaintiff contends that the evidence shows that defendants have waived any reversionary rights they might have and also are guilt of laches. The trial court, because of its other determination of the case in favor of plaintiff, made no finding upon this question. On the retrial, the court will be required to consider that contention.

While we have held that the trial court correctly found that plaintiff's possessory easement in the adjoining strips was subject to defendants' right to substitute means of sup-

port, nevertheless, because of the court's failure to determine the abandonment issue, the judgment must be reversed in its entirety.

Plaintiff's motion to augment is denied. The judgment is reversed, defendants to recover costs.

Peters, P. J., and Wood (Fred B.), J., concurred.

The petition of plaintiff and appellant for a rehearing was denied October 15, 1954, and its petition for a hearing by the Supreme Court was denied November 10, 1954.