[Civ. No. 27717. First Dist., Div. Four. Mar. 31, 1971.]

AXEL V. JOHNSON et al.,
Plaintiffs, Cross-defendants and Respondents, v.
OCEAN SHORE RAILROAD COMPANY,
Defendant, Cross-complainant and Appellant.

**COUNSEL**

Vernon W. Humber for Defendant, Cross-complainant and Appellant.

Carr, McClellan, Ingersoll, Thompson & Horn and David C. Carr for Plaintiffs, Cross-defendants and Respondents.

**OPINION**

**DEVINE, P. J.**—This lawsuit consists of cross-actions to quiet title to a strip of land. The principal question is whether a grant "for railroad purposes" conveyed a fee simple or only an easement. In 1906, Burlington Beach Land Company deeded a lot in what is now the City of Pacifica to Ocean Shore Railway Company. (Appellant, successor, bears the less British name of Ocean Shore Railroad Company.)

The deed, written in handsome script by a scrivener, contains in the

part which includes the grant itself, paragraphs which we denominate A, B, and C, for convenience in later discussion, but these letters are our own designation. It reads: A. "That the said party of the first part, for and in consideration of the sum of Ten Dollars ($10.00) gold coin of the United States of America, to it in hand paid by the said party of the second part, the receipt whereof is hereby acknowledged, has granted, bargained and sold, conveyed and confirmed, and by these presents does grant, bargain and sell, convey and confirm, unto the said party of the second part, and to its successors and assigns forever, for railroad purposes only, all that certain lot, piece or parcel of land, situate, lying and being in the County of San Mateo, State of California, and particularly described as follows, to-wit: A strip of ground sixty (60) feet in width through property of Burlington Beach Land Company [a description by metes and bounds follows]."

B. "It is made a part of this indenture that the said party of the first part shall convey to the said party of the second part, within one month after said road is finished and carrying passengers regularly to and through said property, by a good and sufficient deed, a plot of ground adjoining the right-of-way herein granted for a depot site, and shall at their own expense erect a depot upon site to be so granted. In consideration whereof, the said party of the second part in accepting these premises does hereby agree to stop on signal at the depot above mentioned all local trains."

C. "Together with all and singular the tenements, hereditaments and appurtenances thereunto belonging, or in any way appertaining, and the reversion and reversions, remainder and remainders, rents, issues and profits thereof."

Following this, there is the habendum, which reads: "To have and to hold, all and singular the said premises, together with the appurtenances, unto the said party of the second part to its successors and assigns forever."

Plaintiff,[1] as ultimate grantee from successors of Burlington Beach Land Company, asserts that no more was conveyed than a right of way, which was abandoned about 50 years ago by the railroad. The railroad contends that its predecessor, the railway, acquired a fee simple to the land. Between 1906 and 1911, the spectacular but chimerical railroad was built through artichoke and vegetable farms over the cliffs from San Francisco to the San Mateo County shore. Open-air trains were run until 1920, to the delight of sightseers and picnickers, but to the ruin of the company's finances and the dismay of its stockholders. Discontinuance of service as a

---

[1]Although there are several parties plaintiff (probably lienholders, etc.), we refer to plaintiff in the singular for convenience.

common carrier was allowed in 1920. Tracks had run across the subject property, but these were removed in about 1921 and there has been no railroad use since. The railroad has not put the land to any other use, nor posted notices on it, nor occupied it physically. The original grantor conveyed to another company in 1946, and this company conveyed to plaintiff in 1967. In 1952, Ocean Shore Railroad made a grant of an interest in the property to Laguna Salada Union School District, which, at trial, rested its case on the claims of Ocean Shore. The trial court found that the grant to the railroad was of an easement, not of a fee, that the easement was abandoned by non-use, that title reverted to the owners and that plaintiff owns a fee simple as grantee by reason of the chain of title from the owners in fee simple. The court decided against appellant on secondary or contingent issues as well.

■ The relevant principles of law are: 1) In construing a deed for a railroad right of way, the deed is usually construed as giving a mere right of way, although the terms of the deed would be otherwise apt to convey a fee. (*Highland Realty Co.* v. *City of San Rafael,* 46 Cal.2d 669, 678 [298 P.2d 15]; *Coon* v. *Sonoma Magnesite Co.,* 182 Cal. 597, 601 [189 P. 271]; see *People* v. *Thompson,* 43 Cal.2d 13, 21 [271 P.2d 507]; *Ocean Shore Railroad Co.* v. *Doelger,* 127 Cal.App.2d 392, 399 [274 P.2d 23]; *Moakley* v. *Los Angeles Pacific Ry. Co.,* 139 Cal.App. 421, 422-425 [34 P.2d 218]; *Tamalpais etc. Co.* v. *N.W. Pac. R.R. Co.,* 73 Cal.App.2d 917, 923-929 [167 P.2d 825].)

■ 2) Where the limitation upon a grant appears in the granting clause itself, and not merely in the habendum or any other parts, the limitation ordinarily operates to confine the grant to that of an easement. (*City of Glendora* v. *Faus,* 148 Cal.App.2d 920 [307 P.2d 976]; *Marshall* v. *Standard Oil Co.,* 17 Cal.App.2d 19 [61 P.2d 520].) Although under modern law the common law rule that the granting clause must prevail over the habendum or any later clause is not an absolute and that the intention of the parties, as gathered from the whole instrument, must govern (*Basin Oil Co.* v. *City of Inglewood,* 125 Cal.App.2d 661, 663 [271 P.2d 73]), nevertheless, the place in which the limitation appears is an important element, as recognized in the *Marshall* and *City of Glendora* cases.[2]

---

[2]In all but three of the cases cited by appellant, in which an ambiguous grant was construed to convey a fee to the land rather than an easement, the qualifying words were in places other than those containing the very words of the grant: *Basin Oil Co.* v. *City of Inglewood,* 125 Cal.App.2d 661 [271 P.2d 73]; *Las Posas Water Co.* v. *County of Ventura,* 97 Cal.App. 296 [275 P. 817]; *Van Slyke* v. *Arrowhead Reservoir & Power Co.,* 155 Cal. 675 [102 P. 816]; *Cooper* v. *Selig,* 48 Cal.App. 228 [191 P. 983]; *Battelle* v. *New York, N.H., & H. R.R.,* 211 Mass. 442 [97 N.E. 1004]; *Midkiff* v. *Castle & Cooke, Inc.,* 45 Hawaii 409 [368 P.2d 887]; *Groce* v. *Southern Ry. Co.,*

Not only does the deed refer expressly to "right-of-way" herein granted, but it also shows, in the paragraph designated B, requiring the adjacent depot to be built at the landowner's expense, with the proviso for stopping of trains on signal, that the purpose of the grantor was to insure that what was conveyed would be used as an essential part of railroad transportation. Presumably this was done for the benefit of other lands of the realty company. We note, too, that the actual description commences by referring to a strip of land running through the grantor's property. This expression, although not conclusive, does suggest grant of a right of way only.

3) A clear and distinct limitation in a grant is not controlled by other words less clear and distinct. (Civ. Code, § 1067.) In the case before us, the grant is expressed as "for railroad purposes *only*." (Italics supplied.)

4) Even if the grant at its beginning, including the limitation, be absolutely irreconcilable with the later words conveying hereditaments, remainders and reversions, the former of the irreconcilable parts would prevail. (Civ. Code, § 1070.) The grant cannot be interpreted as conveying a fee simple in the land without nullifying words which were selected by the parties, the words referring to railroad uses.

But if we say we cannot nullify the words of limitation, how can we nullify the later words which appear to indicate the grant of a fee, such as "tenements," "hereditaments," "appurtenances," "reversion and reversions," "remainder and remainders"? In the first place, we have given above the principles which require that if there be irreconcilable conflict, we must resolve it in favor of grant of an easement only. But the conflict, if any, is not so large as it may seem on a first reading. ■ The interest in land which an easement constitutes is real property and itself may be held in fee simple. (*Gerhard* v. *Stephens,* 68 Cal.2d 864, 881 [69 Cal.Rptr. 612, 442 P.2d 692]; *Highland Realty Co.* v. *City of San Rafael,* 46 Cal.2d 669, 677, fn. 1 [298 P.2d 15]; *Appeal of North Beach & M. R.R. Co.,*

164 S.C. 427 [162 S.E. 425]; *Jones* v. *New Orleans & Northeastern R. Co.,* 214 Miss. 804 [59 So.2d 541]; *Rhines* v. *Consumers' Power Co.,* 259 Mich. 236 [242 N.W. 898]; *Alabama & Vicksburg Ry. Co.* v. *Mashburn,* 235 Miss. 346 [109 So.2d 533]; *Sun Oil Company* v. *Emery,* 183 Neb. 793 [164 N.W.2d 644]. In three cases, the limiting words were in the granting clause: *Carr* v. *Miller,* 105 Neb. 623 [181 N.W. 557]; *Quinn* v. *Pere Marquette Ry. Co.,* 256 Mich. 143 [239 N.W. 376]; *Rowell* v. *Gulf, M. & O. R. Co.,* 248 Ala. 463 [28 So.2d 209]. In the *Carr* case, there were many recitals preceding the grant which indicated an outright grant. In *Quinn,* the words were "to be used for railroad purposes only," a weaker explanation of limitation than is that "for railroad purposes only." (*Highland Realty Co.* v. *City of San Rafael,* 46 Cal.2d 669, 677-678 [298 P.2d 15]; *Parks* v. *Gates,* 186 Cal. 151, 155 [199 P. 40].) In *Rowell,* the words "for right of way," although in the granting clause, were but declaratory of contemplated use, and were outweighed by apt words of outright conveyance of land.

32 Cal. 499, 509; *City of Glendora* v. *Faus*, 148 Cal.App.2d 920, 925 [307 P.2d 976]; *Ocean Shore Railroad Co.* v. *Doelger*, 127 Cal.App.2d 392, 398-399 [274 P.2d 23]; *Irvin* v. *Petitfils*, 44 Cal.App.2d 496, 500 [112 P.2d 688]; *Eastman* v. *Piper*, 68 Cal.App. 554, 562 [229 P. 1002]; 17 Cal.Jur.2d (Rev.) Easements, § 2, pp. 121-122.) Thus, the deed in this case giving an easement in fee simple, assures that successors to the original grantee, as appellant "railroad" is the successor to the earlier "railway," will be entitled to the right of way unless it be abandoned.

■ But the point is made by appellant that since "railway" was granted a reversion, in case of abandonment by "railroad" title would revert to railway and this in turn would come to railroad by the general succession of railroad to all of the properties of railway. This proposition, however, is based on the erroneous conception that upon abandonment a reversion comes into operation. Although the word "reverts" frequently is used in connection with abandonment of an easement, and was used in the court's findings in this case, the word is used in a general way and not as referring to the legal concept of reversion. A reversion is the residue of an estate left by operation of law in the grantor or his successors, or in the successors of a testator, commencing in possession on the determination of a particular estate granted or devised. (Civ. Code, § 768.) An easement is a servitude, as described in section 801 of the Civil Code. When the servitude is abandoned it does not "revert"; it is merely extinguished. (See *Ocean Shore R.R. Co.* v. *Doelger*, 179 Cal.App.2d 222, 231-232 [3 Cal.Rptr. 706].)

The case of *Alamo School Dist.* v. *Jones*, 182 Cal.App.2d 180 [6 Cal. Rptr. 272], cited by appellant, does support the general proposition that conveyance of "the reversion or reversions" is persuasive that no such interests were retained by the grantor; but the deed had made no reference to such matter as a right of way. It expressed a grant subject only to a right of repurchase which was personal to the grantor and which ended with his death.

Appellant cites grants made by plaintiff's predecessors as containing such exceptions as to defeat the passing of title to the subject property. But the first grants following the 1906 transaction contain no exceptions; later ones expressly except the right of way given to the railroad; and deeds later again make exception for "so much thereof" as conveyed to the railroad. These instruments are to be considered as a whole. (*Kraemer* v. *Kraemer*, 167 Cal.App.2d 291, 301 [334 P.2d 675].) Taking them together, we find not only that the "so much thereof" refers to the earlier exceptions of right of way, but also that these deeds confirm our interpretation of the original grant.

Some reference is made by appellant to estoppel, but estoppel was not

pleaded, nor was it declared to be an issue by the pretrial order. It is not an issue. (*Krupp* v. *Mullen,* 120 Cal.App.2d 53, 56 [260 P.2d 629]; *Epperson* v. *Rosemond,* 100 Cal.App.2d 344, 345 [223 P.2d 655, 224 P.2d 480].)

Finally, appellant claims title by adverse possession. Where possession and use is permissive at the beginning, one cannot acquire title by adverse possession unless he gives clear and actual notice to the owner of the adverse nature of his subsequent possession. (*Southern Pacific Co.* v. *City & County of San Francisco,* 62 Cal.2d 50, 56 [41 Cal.Rptr. 79, 396 P.2d 383].) In this case, appellant's entry and use of the premises initially was not adverse but was pursuant to the terms of an agreement between its predecessor and the original grantor, whereby the former was granted an easement. Consequently, possession could not become adverse until in some manner appellant or its predecessor had repudiated the owner's title unequivocally.

Appellant asserts that notice of its claim was made by certain letters. But these are inconclusive; in fact, one of appellant's own letters, in November 1951, refers to appellant's interest as a right of way. The earliest possible date of hostile notice was in 1946. At no time since that date, or since 1920 for that matter, did appellant use or occupy the property in any manner. Appellant never posted signs indicating that it owned the property. This complete failure to possess the property defeats any claim of adverse possession. (*Harvey* v. *Nurick,* 268 Cal.App.2d 213, 214-215 [74 Cal. Rptr. 94]; *Landini* v. *Day,* 264 Cal.App.2d 278, 281-282 [70 Cal.Rptr. 260]; *Marsh* v. *Edelstein,* 9 Cal.App.3d 132, 140 [88 Cal.Rptr. 26].)

Appellant, it is true, has paid the taxes on the unimproved property, but this is only one element of adverse possession and is not sufficient to convert the easement to fee simple in the land.

The judgment is affirmed.

Rattigan, J., and Christian, J., concurred.