Opinion
 

 GRIGNON, J.
 

 In this appeal, we are asked to determine whether a deed executed in 1895 by appellants’ ancestor in favor of respondent’s predecessor in interest constitutes a grant of land in fee simple or merely the conveyance of an easement for the operation of a railroad. If the conveyance
 
 *179
 
 was of an easement only, we are also asked to determine whether respondent acquired fee simple title by adverse possession. We conclude that the grant was of a fee interest and, alternatively, that if the original conveyance was of an easement, a fee was obtained by adverse possession. We affirm the judgment of the court below.
 

 Factual and Procedural Background
 

 On November 21, 1895, Jose Antonio Machado executed a deed which conveyed to the Southern California Railway Company an interest in real property located in Los Angeles County. The subject property is located in the middle of what is now Washington Boulevard in the Venice section of the City of Los Angeles.
 
 [1]
 
 The Machado deed provides that, for consideration of $1, Jose Antonio Machado:
 

 “. . . has granted, bargained and sold and conveyed, and by these presents does grant, bargain, sell and convey unto the said party of the second part, its successors and assigns forever, that certain strip or parcel of land for a right of way for a standard gauge railroad, its main track, side tracks, switches, branches, turnouts, and all other uses necessary and incident to railway construction . . . [bjeing a strip of land 60 feet in width, 30 feet thereof being on each side of and parallel to the center line of location of the Southern California railway over and across the land of the grantor: [legal description follows] [¶] Together with all and singular the tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining, and the reversion and reversions, remainder and remainders, rents issues and profits thereof, [¶] To Have and to Hold all and singular the said premises, together with the appurtenances, unto the said party of the second part, its successors and assigns forever.”
 

 The Santa Fe & Santa Monica Railway Company, predecessor in interest of the Southern California Railway Company, had been in possession of and operating a railroad on the land which is the subject of the Machado deed since 1892. The Southern California Railway Company and its successor in interest, respondent Southern Pacific Transportation Company, operated the railroad continuously thereafter until 1977.
 
 [2]
 
 In 1977, respondent abandoned the operation of its railroad on the subject property, by filing and publishing appropriate public notices, and by removing its tracks.
 

 In December 1987, the heirs of Jose Antonio Machado (appellants herein) filed an action to quiet title to the subject property. Appellants contended that
 
 *180
 
 the original grant of land conveyed an easement to operate a railroad, and that the easement was abandoned and consequently extinguished in 1977. Appellants, therefore, claimed ownership in fee simple of the property. Respondent contended that the original grant constituted a grant in fee of the real property. Further, respondent contended that if the original grant had conveyed an easement only, respondent had acquired fee simple title to the property by adverse possession between the time of the abandonment of the railroad right of way in September 1977 and the filing of the instant action in December 1987.
 

 A three-day bench trial was held in October 1989. The trial court ruled that the Machado deed constituted a grant in fee simple and, in the alternative, that respondent had acquired the property by adverse possession between September 1977 and December 1987. Appellants appeal from this judgment.
 

 Discussion
 

 Fee or Easement
 

 The interpretation of writings, including contracts, is essentially a question of law, when no extrinsic evidence has been admitted concerning the meaning of the writing.
 
 [3]
 
 In such circumstances, the appellate court exercises its independent judgment as to the construction of the instrument at issue. (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 292 et seq., at pp. 303-306.) A grant of real property is to be interpreted in the same manner as any other contract. (Civ. Code, § 1066.) The cardinal requirement in the construction of deeds and other contracts is that the intention of the parties as gathered from the four comers of the instrument must govern.
 
 (Basin Oil Co.
 
 v.
 
 City of Inglewood
 
 (1954) 125 Cal.App.2d 661, 663 [271 P.2d 73].)
 

 The task of the reviewing court has been described as placing itself in the position of the contracting parties in order to ascertain their intent at the time of the grant.
 
 (Kimball
 
 v.
 
 Semple
 
 (1864) 25 Cal. 440.) If the intent of the
 
 *181
 
 parties can be derived from the plain meaning of the words used in the deed, the court need not, and should not, resort to technical rules of construction.
 
 (Concord & Bay Point Land Co.
 
 v.
 
 City of Concord
 
 (1991) 229 Cal.App.3d 289, 294 [280 Cal.Rptr. 623]; and
 
 Paddock
 
 v.
 
 Vasquez
 
 (1953) 122 Cal.App.2d 396, 400 [265 P.2d 121].) If there is some ambiguity in the deed, however, the court may interpret the grant in accordance with the rules of construction codified in the Civil Code. For example, if the granting language is ambiguous, then recitals in a deed may be relied upon (Civ. Code, § 1068); a clear and distinct limitation in a grant is not controlled by other words which are less clear and distinct (Civ. Code, § 1067); a grant is to be interpreted in favor of a grantee, but a reservation in a grant is to be interpreted in favor of the grantor (Civ. Code, § 1069); if several parts of a grant are absolutely irreconcilable, then the former of the irreconcilable parts prevails (Civ. Code, § 1070); and most importantly, a fee simple title is presumed to be intended to pass by a grant of real property, unless it appears from the grant that a lesser estate was intended (Civ. Code, § 1105).
 

 Numerous reported decisions are devoted to the construction of deeds granting an interest in real property for purposes of a railroad right of way, and consider whether the estate conveyed was a fee simple or an easement. (See cases compiled in
 
 Johnson
 
 v.
 
 Ocean Shore Railroad Co.
 
 (1971) 16 Cal.App.3d 429, 433-435 [94 Cal.Rptr. 68]; see also the exhaustive multistate annotation, Deed to Railroad Company as Conveying Fee or Easement, 6 A.L.R.3d 973.) However, since the language of each instrument is sui generis, no bright-line rules of construction are available to us to aid in this endeavor. “Analysis of cases on this subject makes it abundantly clear that it is impossible to lay down an invariable and universal rule of construction. [Citation.] Every transaction must be considered individually.”
 
 (Basin Oil Co., supra,
 
 125 Cal.App.2d at p. 664.)
 

 Nevertheless, certain indicia of such deeds have proven useful to courts engaged in this analysis. Our review of reported decisions in this area reveals that those indicia include: 1) whether the reference to a “right of way” is merely descriptive or acts to limit the grant; 2) the location of the limiting language; 3) whether the deed contains references to the interest conveyed as a fee or easement; 4) whether the conveyance includes words of inheritance such as “tenements,” “hereditaments,” or which describe interests in real property which are normally associated with a fee; 5) whether the interest is described as running “over and across” the land of the grantor; 6) the reservation of rights to remove minerals or to cultivate the property in question; and 7) the amount of consideration paid. Of course, in many situations, the court will find aspects indicative of both a fee and an easement and must determine which construction, on balance, better effectuates
 
 *182
 
 the intent of the parties to the instrument. Traditional rules of construction may be helpful where such ambiguities are encountered.
 

 It should be noted at the outset that the use of the term “right of way” in a deed does not determine whether the interest so described constitutes an easement or a fee. Our courts have recognized that the use of that term can mean both an easement and the land held in fee simple which is
 
 used
 
 as a right of way. “Misconception of the effect of the qualifying language used in this deed has doubtless resulted from failing to distinguish between the use of the words ‘for the purpose of granting a right of way’ as a limitation upon the interest conveyed, and the use of the words . . . merely expressing the purpose of making the grant, as indicating the grantor’s motive, as in an unlimited grant of described land ‘for a road to and from said premises.’ ”
 
 (Parks
 
 v.
 
 Gates
 
 (1921) 186 Cal. 151, 155 [199 P. 40]; finding an easement where habendum recited “ ‘[t]his grant is for the—of granting ... a right of way from his premises,” and parties conceded omitted word was “purpose.”) “A right-of-way, of course, may be an easement to pass over land, but the term ‘is also used to describe that strip of land upon which railroad companies construct their road bed, and, when so used, the term refers to the land itself, not the right of passage over it.’ (Black’s Law Dict. (5th ed. 1979) p. 1191.)”
 
 (Concord & Bay Point Land Co., supra,
 
 229 Cal.App.3d 289, 295.)
 

 Johnson
 
 is the most recent analysis by a California Court of Appeal of the precise issue of construction presented by the instant matter.
 
 Johnson
 
 was an action to quiet title to real property. In 1906, a land company had deeded a lot to the Ocean Shore Railway Company, predecessor in interest to appellant therein. The handwritten deed recited consideration of $10 for which the land company “has granted, bargained and sold, conveyed and confirmed, and by these presents does grant, bargain and sell, convey and confirm, unto [the railroad], and to its successors and assigns forever, for railroad purposes only, all that certain lot, piece or parcel of land, situate, lying and being in the County of San Mateo, State of California, and particularly described as follows, to-wit: A strip of ground sixty (60) feet in width through property of [the land company] ...”
 
 (Johnson, supra,
 
 16 Cal.App.3d at p. 432.) A second paragraph of the deed continued, “[the land company] shall convey . . . within one month after said road is finished and carrying passengers regularly to and through said property, by a good and sufficient deed, a plot of ground adjoining the right-of-way herein granted for a depot site, and shall at their own expense erect a depot upon site to be so granted. In consideration whereof, [the railroad]. . . does hereby agree to stop on signal at the depot above mentioned all local trains.’ ”
 
 (Ibid.)
 
 A further paragraph conveyed “ ‘[t]ogether with all and singular the tenements, hereditaments
 
 *183
 
 and appurtenances thereunto belonging, or in any way appertaining, and the reversion and reversions, remainder and remainders, rents, issues and profits thereof.’ ” The habendum clause followed, “ ‘[t]o have and to hold, all and singular the said premises, together with the appurtenances, unto [the railroad] to its successors and assigns forever.’ ”
 
 (Ibid.)
 

 The
 
 Johnson
 
 opinion includes an impressive survey of California and other cases in which an ambiguous grant was construed as an easement or as a grant of a fee interest. The
 
 Johnson
 
 court was influenced to find an easement by its reliance on two principles which it derived from these precedents. First, the court was persuaded that where a grant of real property is limited by language in the deed, the location of the limiting words is critical to the analysis. The opinion cites all prior California railroad right of way cases and several leading out-of-state decisions. It states that, in all but three of the cases where the limiting words were found in the granting clause and not in a later clause or the habendum, the granting clause prevailed. Thus, the court concluded that where limiting language is found in the granting clause for a railroad right of way, the limiting language “ordinarily operates to confine the grant to that of an easement.”
 
 (Johnson, supra,
 
 16 Cal.App.3d at p. 433.) In the
 
 Johnson
 
 deed, the granting clause included the phrase “for railroad purposes
 
 only.” (Id.
 
 at p. 434, italics in original.) Secondly, although the court admitted that the later grant of “tenements, hereditaments, appurtenances, etc.,” seemed to indicate the grant of a fee interest, it relied upon the principle embodied in Civil Code section 1070 that, in the presence of irreconcilable conflict between parts of a deed, the former of the irreconcilable parts will prevail.
 
 (Ibid.)
 

 In the case at bar, appellants argue that
 
 Johnson
 
 is controlling and requires that we reverse the judgment of the trial court and construe the Machado deed as an easement. We disagree for two reasons. First, we conclude that the
 
 Johnson
 
 court relied upon principles of law and construction which are not supported by the authority cited. Secondly, we find marked differences between the wording of the Machado and
 
 Johnson
 
 deeds.
 

 Johnson
 
 states as axiomatic that “[i]n construing a deed for a railroad right of way, the deed is usually construed as giving a mere right of way, although the terms of the deed would be otherwise apt to convey a fee.”
 
 (Johnson, supra,
 
 16 Cal.App.3d at p. 433.) We have reviewed the authority cited for this proposition
 
 [4]
 
 and conclude that no California decision has created such a
 
 *184
 
 rule of law or construction or legal presumption.
 
 [5]
 
 As noted above, the cardinal rule in the interpretation of deeds is to effectuate the original intent of the grantor and grantee, and there is no preference for construing a grant to a railroad as an easement instead of a fee.
 

 Similarly,
 
 Johnson
 
 overstates the importance of the location of reference to the right of way in the deed.
 
 Johnson
 
 plainly suggests that if such words are found in the granting clause, they will operate to limit the grant, but if found in the habendum or other later clause, will not operate to limit the grant. This is not an accurate statement of California law, and places more importance on the location of such words of limitation rather than on the words themselves. Our review of the case law in this area demonstrates that, where references to a “right of way” by the plain meaning thereof imply a limitation on the grant, they tend to be found in the granting clause because that is the logical place for a limitation on a grant. Similarly, where the reference to a right of way tends to be merely descriptive of the intended use of the property granted, such description would not be apt to be found in the granting clause. However, it is the words themselves which are of primary importance in determining whether a limitation or description was intended. California cases recognize references to a right of way as a limitation on a grant, even though located in the habendum,
 
 [6]
 
 and conversely, they recognize that references to a right of way in the granting clause have been construed as merely descriptive.
 
 [7]
 
 Even
 
 Johnson
 
 recognizes that the priority at common law of the granting clause over the habendum has been abandoned, and the intention of the parties, as gathered from the whole instrument, must govern.
 
 (Johnson, supra,
 
 16 Cal.App.3d at p. 433.)
 

 
 *185
 
 Finally,
 
 Johnson
 
 relies heavily on the legal presumption set forth in section 1070 of the Civil Code (former of irreconcilable parts prevails over latter). However, this presumption only comes into operation if the court concludes that parts of the deed are “irreconcilably” in conflict. Also,
 
 Johnson
 
 seems to ignore entirely the legal presumptions which favor construction of a grant as a fee and in favor of the grantee, both of which would urge construction as a fee over an easement.
 

 Thus, to the extent that appellants herein rely upon such general “rules” set forth in
 
 Johnson,
 
 they overstate the extent to which construction of the Machado deed can be governed by general guidelines; understate the importance of the specific wording and placement of the material provisions of the Machado deed, as they may best be interpreted to fulfill the intent of the original parties; and ignore statutory rules of construction which favor finding a fee.
 
 [8]
 

 We now turn to the wording of the Machado deed and compare it to the deed in
 
 Johnson.
 
 While it is true that there are striking similarities between the
 
 Johnson
 
 deed and the Machado deed, there also exist marked differences between them, which persuade us to reach a different result. First, it appears to be of some importance that the grant of land in the
 
 Johnson
 
 deed followed the description of purpose (“granted ... for railroad purposes only . . . that certain lot”) which seems to place greater importance on the words “for railroad purposes only.” In contrast, the Machado deed, by placing the description of purpose after the language granting land, creates greater emphasis on the grant of land (“does grant. . . that certain strip or parcel of land for a right of way for a standard gauge railroad”).
 

 Second, the use of the word “only” (“for railroad purposes only”) in
 
 Johnson
 
 is critical in determining the intent of the parties to the deed, and the absence of that term in the Machado deed, or one of similar import, is material to our conclusion that a fee was intended.
 
 [9]
 
 The entire
 
 Johnson
 
 
 *186
 
 opinion is premised on the assumption that the grant of land therein was
 
 limited
 
 by the phrase, “for railroad purposes only.” We cannot say that the
 
 Johnson
 
 court would have reached the same conclusion in the absence of the word only, or one like it. The nullification of the later grant of “tenements, hereditaments, appurtenances, etc.,” which was admitted to be indicative of a fee simple grant, was based upon the assumption that it was in conflict with the
 
 limited
 
 grant earlier in the deed. In the brief discussion which characterizes these words as a “clear and distinct limitation” in the grant, the court stated simply that “the grant is expressed as ‘for railroad purposes
 
 only,’
 
 ” emphasizing the word “only.”
 
 (Johnson, supra,
 
 16 Cal.App.3d at p. 434, italics in original.) The Machado deed instead provides that the grant of land is “for a right of way for a standard gauge railroad”
 
 [10]
 
 but does not limit the use of the land to that purpose, or create conditions subsequent or covenants with a right of reverter in the event that the grantee departed from the agreed-upon use for the property. “In construing the instrument we cannot overlook the fact that if the grantors really intended to convey only an easement, they could have easily so expressed that purpose.”
 
 (Basin Oil Co., supra,
 
 125 Cal.App.2d at p. 666 [finding a fee]; see also
 
 Marshall
 
 v.
 
 Standard Oil Co.
 
 (1936) 17 Cal.App.2d 19, 25 [61 P.2d 520], “[t]he word ‘exclusively’ has a definite and certain meaning” [as in “the land herein conveyed is to be used exclusively for street purposes”; finding an easement].)
 

 While appellants are correct that easements have been found in cases in which the word “only” (or a similar term such as “exclusively”)
 
 [11]
 
 is not used, many such cases involve deeds with
 
 other terms or references
 
 indicating the parties’ intent to convey only an easement. See, e.g.,
 
 Faus
 
 v.
 
 Los Angeles
 
 (1961) 195 Cal.App.2d 134 [15 Cal.Rptr. 783] (“for railroad purposes” held to limit grant to easement when taken with multiple other references to term “right of way,” and where land was granted “subject to earlier terms and conditions”). Here, no other language in the deed conveys such an intent. This is a third, material distinction from the
 
 Johnson
 
 deed, which also included an additional reference to the “right-of-way herein granted” in the second paragraph of the deed.
 

 
 *187
 
 Thus, we conclude that the term “for a right of way for a standard gauge railroad” merely constitutes a description of the intended purpose of the land rather than a limitation on its grant.
 
 [12]
 
 “[T]he vast majority of cases hold the transfer of a fee title is not vitiated solely for the reason that the deed contains a clause declaring the purpose for which it is intended the granted premises shall be used. This is particularly indicated where such purpose will not inure specially to the benefit of the grantor and his assigns, but is in its nature for the general public, and where there are no other words indicating an intent that the grant is to be void if the declared purpose is not fulfilled.”
 
 (Basin Oil Co., supra,
 
 125 Cal.App.2d at p. 664.) [Where “right of way” language was contained only in the habendum, fee simple found.] “ ‘An expression of the purposes of the conveyance as to the use of the property conveyed . . . [is] generally held to be directory only, and not to qualify or limit a grant which is in absolute form. But this principle is not applicable where the qualifying words are in the granting part of the deed, and so clearly connected with the word “grant” as naturally to suggest that the intention was merely to convey the right to use the property for a certain purpose.’ ”
 
 (Id.
 
 at p. 665, citing 9 Cal.Jur., p. 274.) (Cf.
 
 Cooper
 
 v.
 
 Selig
 
 (1920) 48 Cal.App. 228, 229 [191 P. 983], “ ‘for the purposes of a public road of said city’ ” held not to qualify or limit grant or reduce conveyance to an easement; also
 
 Midstate Oil Co., supra,
 
 93 Cal.App. at page 708, “[t]here is nothing in the deed which in any way limited the company in the use that it might make of the land. The fact that the deed makes use of the words ‘right of way’ in one of its calls in the description does not limit the use to which the lands may be put. We must hold that the deed conveyed the fee.”) Viewing the expression “for a right of way for a standard gauge railroad” as directory and not qualifying allows all of the terms in the Machado deed to be given meaning and requires that none of them be nullified because, in contrast to the terms of the
 
 Johnson
 
 deed, there exists no irreconcilable conflict between them.
 

 Certainly, there are aspects of the language of the Machado deed which would urge that we construe it as an easement. The consideration recited in the deed is only $1, which may indicate that only an easement was conveyed. On the other hand, we are unable to ascertain from the record whether this was the true consideration for the grant, and so are reluctant to accord it much weight. Additionally, the deed recites that the land which is the subject
 
 *188
 
 of the grant runs “over and across the land of the grantor.” This description seems to suggest, but does not require, construction as an easement, rather than a fee. Appellant argues to the contrary, maintaining that such language compels an interpretation of the Machado deed as an easement, under the authority of
 
 Highland Realty Co., supra,
 
 46 Cal.2d 669. (See also,
 
 Johnson, supra,
 
 16 Cal.App.3d at p. 434, reference to strip of land running through the grantor’s property suggests a grant of right of way only.)
 

 Highland
 
 was a consolidated action to quiet title to a strip of land formerly used as a railroad right of way. The land had been part of a ranch owned by Patrick Hayes in 1873. At that time, the North Pacific Coast Railroad commenced a condemnation proceeding against Hayes in order to acquire the property as a right of way.
 
 [13]
 
 Hayes filed an answer in the condemnation action, but prior to trial, in order to settle the condemnation action, conveyed an interest in the property to the railroad by deed in 1875. The operative language of the deed was that Hayes “doth grant, bargain and sell, convey and confirm unto the [railroad] . . . and to its successors, heirs and assigns forever” the property involved. The property was described in the deed as “all that right of way for the construction and use of said railroad upon, over and along a strip of land [legal description followed].” The deed also provided that Hayes would have the right to open streets, avenues or crossings “across the right of way.” The deed conveyed all tenements, hereditaments, etc., by language similar to the Machado deed and the habendum clause was essentially the same as in the Machado deed. The metes and bounds description of the property referenced the “center of the Railroad Track as at present located.”
 
 (Highland Realty Co., supra,
 
 46 Cal.2d at pp. 673-674.)
 

 Following the discontinuance of rail service in 1945, the successor railway company deeded the land in question to the respondent cities. Hayes had devised the ranch to his widow, who conveyed it to the predecessors in interest of the
 
 Highland
 
 plaintiffs, “subject to the right of way of the North Pacific Coast Rail Road Company.” At issue in the quiet title trial was whether Hayes had conveyed an easement or a fee to the railroad company in 1875. The trial court held that a fee was conveyed.
 

 On appeal, this judgment was reversed, the court finding that Hayes had conveyed only an easement. Appellant argues that the
 
 Highland
 
 decision stands for the proposition that when the granting language refers to the property conveyed as running “upon, over and along a strip of land,” then
 
 *189
 
 only an easement may be found. However, as we have explained, no such bright-line test exists for construing the intentions of the grantor and grantee to convey an easement or a fee interest, and the
 
 Highland
 
 court did not purport to create one. Rather, this language was critical to the
 
 Highland
 
 court because it was the very language used by the railroad to describe the interest sought earlier in the condemnation action. “As related hereinabove, the deed, which was given only after the railroad had seemingly already constructed its tracks under the court’s order of possession, followed the language of the railroad’s eminent domain complaint and the order of possession in describing the property as a ‘right of way for the construction and use of said Railroad upon, over, and along a strip of land . . . described as follows . . . .’It thus appears that
 
 the deed conveyed exactly that which the railroad sought, and was authorized to condemn, i.e., an easement, and nothing more.” (Highland Realty Co., supra,
 
 46 Cal.2d at p. 676, italics added.)
 

 In the case at bar, we have no such strong indication of the intent of the grantor and grantee to convey only an easement. In addition, the
 
 Highland
 
 court noted the difference between a grant of a right of way and the grant of land to be used as a right of way. This language distinguishes the
 
 Highland
 
 deed from the Machado deed before us, which granted a “strip or parcel of land for a right of way.” Finally, the
 
 Highland
 
 deed included, in the secondary grant of a crossing or street, an additional reference to the main interest conveyed to Hayes as a right of way.
 
 [14]
 

 Here, we have considered all the terms within the four corners of the document to determine which construction would better fulfill the original intent of the grantor and grantee. That interpretation has been guided by prior appellate court opinions, together with the legal presumptions preferring the grant of a fee (Civ. Code, § 1105) and resolving any problem of interpretation in favor of the grantee (Civ. Code, § 1069). We conclude that, on balance, a construction of the instrument as a fee more accurately reflects the intent of the parties to the deed.
 

 Adverse Possession
 

 Even if the interest held by respondent, as successor in interest to the original grantee, were merely an easement extinguished upon its abandonment in 1977, we agree with the trial court that respondent subsequently acquired title to the subject property by adverse possession.
 

 In order to obtain title by adverse possession, the property must be held and possessed adversely to the legal title of the actual holder of title for
 
 *190
 
 five years. (Code Civ. Proc., § 321; Civ. Code, § 1007.) Sufficient possession is established if the land has been “usually cultivated or improved” (Code Civ. Proc., § 323, subd. 1); has been “protected by a substantial inclosure” (Code Civ. Proc., § 323, subd. 2); or is unenclosed but used for fuel, timber, husbandry, pasturage, or “for the ordinary use of the occupant” (Code Civ. Proc., § 323, subd. 3). The possession must be actual, open and notorious, and exclusive. The use must be adverse. Thus, where the owner permits usage of the property, that use is not adverse. However, one who uses land by consent may effect an ouster by “unqualified and definite renunciation of subordination to the owner” even though the subsequent use is identical to the uses prior to renunciation.
 
 (Southern Pacific Co.
 
 v.
 
 City & County of San Francisco
 
 (1964) 62 Cal.2d 50, 56 [41 Cal.Rptr. 79, 396 P.2d 383].) Such renunciation must be of sufficient clarity to put the owner on notice of the adverse claim to title.
 
 (Ibid.)
 
 Payment of taxes alone is not sufficient, especially where only a portion of the property is subject to taxation.
 
 (Id.
 
 at pp. 57-58.) Occasional visits to a vacant lot, planting of two rose bushes and four trees, and isolated instances of clearing have been held insufficient to establish continuous occupation, especially where there was no evidence of rental or leasing of the property.
 
 (Madson
 
 v.
 
 Cohn
 
 (1932) 122 Cal.App. 704 [270 P. 216].)
 

 Since the trial court’s conclusion that all elements of adverse possession had been met was based on factual findings, our review on appeal is limited to whether substantial evidence exists to support such findings. We concluded that it does. “[I]f the word ‘substantial’ means anything at all, it clearly implies that such evidence must be of ponderable legal significance. Obviously the word cannot be deemed synonymous with ‘any’ evidence. It must be reasonable in nature, credible, and of solid value: it must actually be ‘substantial’ proof of the essentials which the law requires in a particular case.”
 
 (Estate of Teed
 
 (1952) 112 Cal.App.2d 638, 644 [247 P.2d 54].)
 

 In the instant matter, there is no dispute that respondent ceased operation of its railroad on the subject property in 1977. Appropriate notices required by federal law were published. The record reveals that, in the period following cessation of railroad activities, respondent’s “policy and procedure” regarding properties of this kind was to post signs on the property forbidding trespassing, dumping, and illegal parking. Photographs were admitted into evidence which demonstrated that after respondent abandoned its use of the property for railroad purposes, it did, in fact, post multiple signs on the perimeter of the property which read, in relevant part, “Private Property, [¶] Tow Away. [¶] No Parking Any Time. [¶] No Trespassing No Loitering. [Instruction that violators will be prosecuted and vehicles towed away, with code citations.] [¶] S.P.R.R. Co.”
 

 
 *191
 
 It also appears from the record that appellants did not attempt to controvert evidence presented by respondent that it had paid the property taxes for the property in question throughout the alleged period of abandonment. Additional evidence was presented that respondent periodically cleared the property of weeds and debris, frequently in response to demands or complaints by public agencies. Respondent leased a portion of the property to a billboard company, which erected two billboards on the property, and leased a small portion of the property for a parking lot. Respondent also erected a barricade across at least a portion of the property. Respondent’s property managers policed the property to ensure that no unauthorized uses were occurring on the property, and respondent engaged a towing service to remove unauthorized vehicles from the property.
 

 Appellants contend that the signs erected by respondent do not give actual notice of ownership. We disagree. The words “Private Property” and “S.P.R.R. Co.” are placed at the top and bottom of the signs in question, in lettering of identical style and of equal size. It clearly gives notice that S.P.R.R. Co. considered itself in possession and control of the property, and certainly raised the inference that respondent was asserting an ownership interest. This information must be considered together with the complete change in the character of use of the property. Plainly, portions of the property were leased for advertising and parking purposes. Traffic barricades were erected. Appellants had ample notice that respondent was asserting an interest in the property which was adverse to the earlier consensual use— that of a right of way for railroad purposes. Respondent also paid the required property taxes, employed a manager to ensure against unauthorized uses of the property, maintained the property, removed offending vehicles from the property, and responded to complaints concerning the property from both private parties and public agencies.
 

 Johnson
 
 is inapposite. In
 
 Johnson,
 
 following the abandonment of the right of way for railroad purposes and the removal of the track, there was no occupation or use of the property by the railroad company, nor did the railroad company post signs on the property. This “complete failure to possess the property” led the appellate court to reject any claim of adverse possession.
 
 (Johnson, supra,
 
 16 Cal.App.3d at p. 436.)
 

 We hold that substantial evidence exists to support the trial court’s finding that title was obtained by respondent by adverse possession.
 

 
 *192
 
 Disposition
 

 The judgment is affirmed. Appellants shall bear the costs on appeal.
 

 Turner, P. J., and Boren, J., concurred.
 

 [1]
 

 The subject property includes approximately 90,000-100,000 square feet
 

 [2]
 

 Because the complaint in this action is not included in the record, it is unclear what other parties are defendants and respondents in this matter.
 

 [3]
 

 Although the trial court in this matter received substantial documentary evidence and live testimony at trial, the evidence was not admitted to assist in the interpretation of that instrument. Rather, the evidence was offered to establish the chain of title to the subject property and the validity of appellants’ claims to the property and to demonstrate respondent’s treatment of the property in support of its claim of adverse possession. While some extrinsic evidence concerning the Machado deed was admitted, the trial court did not rely on it in arriving at its construction of the deed as a fee simple grant. The trial court stated its reasoning, in some detail, on the record, and the judgment includes a summary of the court’s analysis. Neither the oral decision nor the judgment indicate that extrinsic evidence played any part in the court’s decision.
 

 [4]
 

 Johnson
 
 cites:
 
 Highland Realty Co.
 
 v.
 
 City of San Rafael
 
 (1956) 46 Cal.2d 669, 678 [298 P.2d 15];
 
 Coon
 
 v.
 
 Sonoma Magnesite Co.
 
 (1920) 182 Cal. 597, 601 [189 P. 271];
 
 People
 
 v.
 
 Thompson
 
 (1954) 43 Cal.2d 13 [271 P.2d 507];
 
 Ocean Shore Railroad Co.
 
 v.
 
 Doelger
 
 (1954) 127 Cal.App.2d 392, 399 [274 P.2d 23];
 
 Moakley
 
 v.
 
 Los Angeles Pac. Ry. Co.
 
 (1934) 139
 
 *184
 
 Cal.App. 421, 422-425 [34 P.2d 218]; and
 
 Tamalpais etc. Co.
 
 v.
 
 N. W. Pac. R.R. Co.
 
 (1946) 73 Cal.App.2d 917, 923-929 [167 P.2d 825].
 
 Thompson
 
 involved a grant of a “right of way” to the State of California for a public road, and did not even involve a grant to a railroad.
 
 Ocean Shore Railroad Co.
 
 involved the interpretation of a judicial decree in an earlier action in which it was stated that plaintiff is the “ ‘owner in fee . . . of a right-of-way ....’”
 
 (Ocean Shore Railroad Co., supra,
 
 at p. 396.)
 
 Moakley
 
 involved a “grant. . . [of] a right of way for railroad purposes” where the grantor retained a right of reversion if the railroad operation should cease. In
 
 Tamalpais etc. Co.,
 
 the issue was whether a grant was an easement or a fee on condition subsequent. The court did not even reach the issue, finding that it was error to grant a directed verdict on the issue of abandonment of the railroad purposes. Further, the language regarding railroad purposes was explicit in limiting the uses of the grant to a railroad, and provided that if such operations are terminated that the grantee will “ ‘on demand surrender and deliver up the possession of said land.’ ”
 
 (Tamalpais etc. Co., supra,
 
 at p. 923.)
 
 Coon
 
 appears to be the only case which actually states that deeds for railroad rights are usually construed as granting a right of way, but cites only a single Kansas opinion.
 
 (Abercrombie
 
 v.
 
 Simmons
 
 (1905) 71 Kan. 538 [81 Pac. 208].) See discussion of
 
 Highland Realty Co.
 
 v.
 
 City of San Rafael, infra.
 

 [5]
 

 Unfortunately, this proposition has been perpetuated in subsequent cases and other materials. See, e.g.,
 
 Concord & Bay Point Land Co., supra,
 
 229 Cal.App.3d at page 294, and 4 Witkin, Summary of California Law (9th ed.) Real Property, section 441 at page 622, both citing
 
 Johnson.
 

 [6]
 

 See, e.g.,
 
 Concord & Bay Point Land Co., supra,
 
 229 Cal.App.3d at pages 295-296.
 

 [7]
 

 See
 
 Johnson, supra,
 
 16 Cal.App.3d at pages 433-434, footnote 2.
 

 [8]
 

 We are also troubled by
 
 Johnson's
 
 reliance on subsequent grants made by plaintiff’s predecessors, only some of which contain exceptions for the right of way given to the railroad, and others of which excepted “so much thereof’ as conveyed to the railroad. There is no indication that the subsequent grants were made by the original grantor, and it appears that they were not.
 
 Johnson
 
 considered these grants as confirmation of its interpretation of the original grant as an easement. We find that the better view is to treat subsequent grants, by the grantor’s descendents, as irrelevant to the intent of the grantor and grantee at the time of the original grant. See
 
 Concord & Bay Point Land Co., supra,
 
 229 Cal.App.3d at pages 295-296.
 

 [9]
 

 In discussing the effects of this limiting language, the court added emphasis to the word “only” as used in the granting language. This indicates to this court that the
 
 Johnson
 
 court viewed the presence of that word to be essential to the construction of that phrase as a limitation on the grant, and not merely as a description of the intended use.
 

 [10]
 

 We note, that this phrase is similar to the language in
 
 Rowell
 
 v.
 
 Gulf M. & O. R. Co.
 
 (1946) 248 Ala. 463 [28 So.2d 209] (“for right of way”), which were contained in the granting clause but were “declaratory of contemplated use, and were outweighed by apt words of outright conveyance of land.”
 
 (Johnson, supra,
 
 16 Cal.App.3d at p. 434, fn. 2.) The “apt words” of conveyance of land were identical to the granting language found in the Machado deed.
 

 [11]
 

 Use of such terms alone is insufficient to establish an intent to convey only an easement. See
 
 Greene
 
 v.
 
 O’Connor
 
 (1892) 18 R.I. 56 [25 A. 692], cited in
 
 Marshall, supra,
 
 17 Cal.App.2d at page 24 (“and for no other purpose”; finding a fee);
 
 Basin Oil Co., supra,
 
 125 Cal.App.2d at p. 664 (“[t]he words ‘and to no other use, intent or purpose, whatsoever’ have been held not to convert what would otherwise be an absolute grant into [a conditional one]”).
 

 [12]
 

 Such reference alone will not suffice to limit the grant to an easement.
 
 (Midstate Oil Co.
 
 v.
 
 Ocean Shore R.R. Co.
 
 (1928) 93 Cal.App. 704 [270 P. 216], reference to right of way merely descriptive.)
 

 “There is a vast difference between a grant for purposes of ‘right of way’ for a road and a grant of land ‘to be used for a road.’ The latter grant may be entirely consistent with the conveyance of a fee-simple title, as a road may be maintained as readily on land held in fee as under an easement, but the grant of land as a right of way recognizes nothing but an easement.”
 
 (Parks, supra,
 
 186 Cal. at p. 155.)
 

 [13]
 

 The railroad could obtain only an easement, not a fee, from its condemnation action, although it could have acquired the land outright by purchase.
 
 (Highland Realty Co., supra,
 
 46 Cal.2d at p. 676.)
 

 [14]
 

 This was described as a crossing or street “across the right of way.”